Joseph B. MEYER, Attorney General,
State of Wyoming, Petitioner,

v.

William D. NORMAN, Respondent.

No. D–87–2.

Supreme Court of Wyoming.

Aug. 24, 1989.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for petitioner.

William D. Norman, pro se.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

## ORDER OF DISBARMENT FROM THE PRACTICE OF LAW

CARDINE, Chief Justice.

The Grievance Committee of the Wyoming State Bar has presented to this Court its Report, Findings and Recommendation which incorporates Findings of Fact, Conclusions of Law, and Recommendation, a copy of which is attached to this order as *Appendix A* and hereby incorporated herein by reference. It reflects action upon an Amended Complaint for Formal Disciplinary Proceedings in the Matter of William D. Norman, Docket Nos. 68–82, 18–84, 50–85, 17–86, 23–86, 59–86, 88–86, and 89–86, filed by the Office of the Attorney General before the Grievance Committee on December 30, 1986. The Grievance Committee of the Wyoming State Bar submitted its recommendation of disbarment and the assessment of costs against the Respondent in the amount of $4,149.55 as the appropriate sanction. The Respondent–Attorney (Respondent) filed his Allegation of Errors and Brief in Answer representing his exceptions to the Report, Findings and Recommendation of the Grievance Committee pursuant to *Rule VI(i)(2) of the Disciplinary Code for the Wyoming State Bar*, together with transcripts of the hearing held before the Grievance Committee. Both parties have filed briefs in the matter and oral argument has been presented. The Court, having considered the file and record of the Court, the proceedings before the Grievance Committee of the Wyoming State Bar, the responsive pleading of the Respondent, and the briefs and arguments of the parties, finds and rules:

The Respondent's primary contention in opposition to the Recommendation of Disbarment submitted by the Grievance Committee is that the Grievance Committee is without jurisdiction because it had no rules that granted the executive secretary the power to accept formal complaints and to issue process and that it had not adopted evidentiary rules as required by *Rule*

*IV(d)(13) of the Disciplinary Code.* Other contentions of the Respondent are his claims that he has been severely and unfairly disadvantaged through unnecessary delay in the proceedings and that the findings of fact incorporated in the Report of the Grievance Committee are not supported by clear and convincing evidence. His ultimate contention is that, due to the combination of these errors, both disbarment and assessment of costs are improper in this instance. In his Allegation of Errors and Brief in Answer, the Respondent presents these issues:

"The Bar Grievance Committee is without jurisdiction because it never established rules granting the executive secretary the power to accept formal complaints for filing and to issue process.

"There has been unnecessary delay in the proceedings to a point which has severely disadvantaged the respondent. The Grievance Committee has been guilty of laches and this should be considered in the Respondent's favor."

In his Addendum to Allegations of Error, the Respondent presents these additional issues:

"The Bar Grievance Committee did not adopt any rules of evidence as required by Rule IV(d)(13) of the Bar Disciplinary Code. As a consequence the Committee was without jurisdiction to hear the matter.

"The Bar Grievance Committee has unconstitutionally attempted to assess costs against the Respondent."

Our examination of the contentions of the Respondent causes us to conclude that they manifest a degree of misunderstanding about the Grievance Committee and its appropriate role in disciplinary proceedings. It well may be that this style of misunderstanding is not peculiar to the Respondent, and the members of the Wyoming State Bar will benefit from a clarification of certain aspects of the role and function of the Grievance Committee. The explanation charts the resolution of several of the Respondent's claims.

■ The Supreme Court of this state is charged with the responsibility for adopting rules and regulations concerning the practice of law in Wyoming. *Section 5–2–118(a), W.S.1977 (Dec. 1977 Repl.).* Cf. *White v. Fisher,* 689 P.2d 102 (Wyo.1984) (Supreme Court vested with superintending control over all the courts of the state and the state judicial system in general with a duty to protect the integrity of these entities). Inherent to this responsibility is the requirement that the court establish ethical standards as well as effective practices and procedures for disciplining, suspending, and disbarring attorneys in the event those standards are violated. *Section 5–2–118(a)(i), (iii), W.S.1977 (Dec. 1977 Repl.); § 33–5–113, W.S.1977 (June 1987 Repl.).* In meeting this responsibility, the Supreme Court has adopted *Rules of Professional Conduct for Attorneys at Law* and the *Disciplinary Code for the Wyoming State Bar.*

■ The Supreme Court, in addition and also pursuant to statute, is to establish and maintain a bar association for the purpose of enforcing such rules and regulations. *Section 5–2–118(a)(ii), W.S.1977 (Dec. 1977 Repl.).* All persons practicing law in this state are required to be members in good standing of the Wyoming State Bar. *Rule 2, Amended Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming; Wyoming State Bar v. Hardy,* 61 Wyo. 172, 156 P.2d 309 (1945). The practice of law by any person who is not a member in good standing of the Wyoming State Bar constitutes the unauthorized practice of law, is wrongful, and is subject to sanction. *Section 33–5–117, W.S.1977 (June 1987 Repl.); Hardy.* The prohibition is inclusive and clearly encompasses the attorney who once was a member in good standing but who has been disbarred for disciplinary reasons, or who, for any reason, has withdrawn from the bar or allowed his membership to lapse. *Section 33–5–116, W.S.1977 (June 1987 Repl).* Admission to the bar shall be granted only through petition to this court. *Section 33–5–104, W.S.1977 (June 1987 Repl.).*

The product of this statutory scheme is to vest in the Supreme Court of the State of Wyoming the power, the duty, and the corresponding jurisdiction to supervise the conduct of all Wyoming attorneys, each of whom is an officer of the court. The most serious sanction then for an infraction of the *Disciplinary Code for the Wyoming State Bar* is a proceeding that culminates in disbarment. *Mendicino v. Whitchurch,* 565 P.2d 460 (Wyo.1977). As the court said in *State Board of Law Examiners of Wyoming v. Brown,* 53 Wyo. 42, 48, 77 P.2d 626, 628 (1938), disciplinary proceedings and disbarment are "necessarily incident to the inherent power of courts to control properly their own affairs." Disbarment serves as an effective sanction, as well as an effective device for protecting the public, because the invocation of this remedy forecloses an attorney from the practice of law within this state. *Section 5-2-118(a)(ii); § 33-5-117, W.S.1977 (June 1987 Repl.).*

In furtherance of its supervisory role, the court has provided for the establishment of a grievance committee, the primary .function of which is to investigate allegations of misconduct by members of the bar and to make recommendations to the court in the event that serious transgressions are indicated. *Rule IV, Disciplinary Code for the Wyoming State Bar.* The committee is an ancillary body structured by the court and has no independent power, jurisdiction, or authority other than that specifically delegated to it in accordance with the *Disciplinary Code.* Its actual function, as the formal structure connotes, can best be described as that of an adviser to this court. See *State Board of Law Examiners of Wyoming v. Spriggs,* 61 Wyo. 70, 155 P.2d 285 (1945). See also *Brown.* Ultimately, it is this court, not the grievance committee, that maintains control over disciplinary proceedings at all times. *Matter of Clark,* 613 P.2d 1218 (Wyo.1980); *Mendicino.* See *Spriggs.* To accomplish its appropriate role effectively, however, it is essential that the committee be vested with certain powers that enable it to carry out its investigatory and hearing functions. To that end, the court has adopted rules that delegate jurisdiction over allegedly aberrant attorneys to the grievance committee that is consistent with that afforded to the court. *Rule I, Disciplinary Code for the Wyoming State Bar.*

The functions that are delegated to, and exercised by, the committee in a disciplinary proceeding, however, are performed as an adjunct of this court. *Rule I, Disciplinary Code for the Wyoming State Bar; Mendicino.* Cf. *Velkov v. Superior Court in and for Los Angeles County,* 40 Cal.2d 289, 253 P.2d 25 (Cal.1953) (non-resident witness appearing in disciplinary proceedings entitled to immunity from service of process even though such proceedings technically are not conducted before a judicial tribunal). The role of the committee is advisory only, and the ultimate and actual authority to discipline resides in this court. *Clark.* Any question as to the intrinsic jurisdiction of the grievance committee is moot because it is, in essence, an arm of this court, and its jurisdiction is the same as the jurisdiction of the court. *Rule I, Disciplinary Code of the Wyoming State Bar.* We summarize by noting that, since disciplinary jurisdiction over a member of the Wyoming State Bar emanates directly from this court and not from the grievance committee, any jurisdictional issues that are concerned only with the grievance committee are not relevant despite claims, such as those of this Respondent, of its failure to establish rules granting the executive secretary the power to accept formal complaints for filing and to issue process and, for that reason, those contentions are disregarded.

The same rationale is pertinent to the Respondent's third claim. In asserting that contention, the Respondent argues that the Grievance Committee was without jurisdiction because it had not adopted rules of evidence as required pursuant to *Rule IV(d)(13) of the Disciplinary Code for the Wyoming State Bar.* That issue is not a material one, regardless of the adoption, or non-adoption, of the rules of procedure alluded to in *Rule IV(d)(13).* While the failure to adopt rules can cause a num-

ber of potential problems with respect to the disposition of matters before the grievance committee, it is not a failure that would deprive the grievance committee of jurisdiction.

 Intrinsic to these jurisdictional claims by the Respondent is an additional concern, articulated primarily in his oral argument, that his right to due process was violated by the actions of the Grievance Committee. *U.S. Const. amend. XIV, § 1; Wyo. Const. art. 1, § 6.* This particular contention is specifically raised with respect to the Respondent's fourth issue concerning the assessment of costs. We recognize that both the federal and state constitutions have controlling significance as the supreme and paramount law of the nation and of this state. See *White v. Fisher,* 689 P.2d 102. See also *Rasmussen v. Baker,* 7 Wyo. 117, 50 P. 819 (1897). If the constitutional rights of the Respondent were impermissibly infringed by the procedures invoked in this proceeding, actions that have ensued up to this point would be nullified, and the Respondent would retain any right to practice law that he previously possessed or enjoyed. That would be true until the deprivation of constitutional rights was rectified and a clear and convincing showing of unfitness to practice law was made in a manner consistent with the mandates of due process. See *White v. Board of Trustees of Western Wyoming Community College District,* 648 P.2d 528 (Wyo.1982), *cert. denied* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). If a deprivation of rights of due proces could make disbarment improper, the same effect should occur with respect to the assessment of costs.

 In an instance such as this, consistent with the general rule, the Respondent, as the party claiming an infringement of his constitutional rights, must assume the burden of demonstrating that infringement. He is required to show that he has a protected interest of life, liberty, or property, and that the interest has been affected in an impermissible way. *Munoz v. Maschner,* 590 P.2d 1352 (Wyo.1979); *Doe v. Burk,* 513 P.2d 643 (Wyo.1973); *Johnson v.*

*Schrader,* 507 P.2d 814 (Wyo.1972). In the absence of such a showing, not only briefed but adequately supported by the record, we have no basis upon which to consider the Respondent's contention. *Doe.* "Constitutional questions are too important to be answered by this court at random and should not be answered unless fully presented." *Witzenburger v. State, ex rel. Wyoming Community Development Authority,* 575 P.2d 1100, 1134 (Wyo.1978); *Tharp v. Unemployment Compensation Commission,* 57 Wyo. 486, 121 P.2d 172 (1942). Mere allegations or bald assertions of the deprivation of constitutional rights do not suffice to justify inquiry, just as unsupported allegations of an issue of material fact are insufficient to defeat a properly presented motion for summary judgment. See *Bell v. Gray,* 377 P.2d 924 (Wyo.1963). See also *Miller v. Board of County Commissioners of Natrona County,* 79 Wyo. 502, 337 P.2d 262 (1959).

 The Respondent has not sustained his burden. Our examination and evaluation of the materials in the record and the arguments presented convinces us that, with respect to the issues relating to professional discipline, there is no specification of when or how the Respondent's rights to due process may have been violated. He provides neither sufficient factual support nor legal authority for us to determine if he has a protected interest and, if so, whether that interest has been burdened in an impermissible fashion. Consequently, we do not address the constitutional concerns in the context in which the Respondent raises them. *Witzenburger; Johnson; Hamblin v. Arzy,* 472 P.2d 933 (Wyo. 1970).

 Even though we cannot accept the precise contentions of the Respondent, we can consider a purported deprivation of procedural due process in considering whether, in the course of the entire proceedings and all the attendant circumstances, there was a denial of fundamental fairness. *Munoz.* While we approach constitutional questions with due care and reluctance because of their extreme importance, *Witzenburger,* those questions can be

raised and considered even in the absence of brief or argument if it is apparent that a violation has occurred. See *White*, 689 P.2d 102. See also *Allen v. Allen*, 550 P.2d 1137 (Wyo.1976); *State Highway Commission v. Triangle Development Company*, 369 P.2d 864, *reh. denied* 371 P.2d 408 (Wyo.1962). In this particular proceeding, however, as we previously have noted, the record discloses no apparent lack of fundamental fairness with respect to the adjudication of the Respondent's fitness to practice law. He received adequate notice of the charges of the violations of the disciplinary rules in the context of claims asserted by various clients and the Complaint for Formal Disciplinary Proceedings that was filed on December 2, 1987. He was advised of the potential consequences with respect to his right to practice law. This was adequate notice to permit him to make knowing and intelligent decisions with respect to his case, and to secure evidence and present legal argument to rebut and refute the accusations.

 We perceive a difference with respect to the recommendation by the Grievance Committee that costs be imposed upon the Respondent. Although the record discloses that the Respondent had ample notice of the specific claims of professional misconduct that were brought against him, there is nothing in the record to demonstrate notice with respect to costs. There is no indication that the Respondent ever was provided a statement of those costs that outlined, in any degree of detail, the costs that were to be imposed or what specific items he would be expected to defend against. The record does not even demonstrate a notice of an intention to recommend assessment of costs in this proceeding. *Rule XIX of the Disciplinary Code of the Wyoming State Bar* apparently requires the certification of the costs of the Committee, but a recommendation as to the assessment of costs is discretionary. Fundamental fairness demands that sufficient notice of charges and their consequences must be provided to enable the Respondent to make meaningful choices with the respect to the need for, and the manner of, his defense without being subjected to any element of surprise. *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); *White*, 648 P.2d 528. With respect to the assessment of costs, that style of notice was not provided by the Grievance Committee to this Respondent. There is an apparent deprivation of his right to due process. For that reason, we conclude that the assessment of costs as recommended by the Grievance Committee is improper. That aspect of this disciplinary matter must be remanded to the Grievance Committee for the purpose of an additional hearing, after proper notice has been given to the Respondent outlining the costs and charges sought to be imposed. The court then will consider and make an appropriate determination as to which costs, if any, are to be assessed, based upon a supplemental report from the Grievance Committee.

 The Respondent also contends that there was unnecessary delay in the proceedings that resulted in severe disadvantage to him. He concludes that the Grievance Committee has been guilty of laches. "Laches is an equitable defense, and its applicability depends upon the circumstances of each case." *Moncrief v. Sohio Petroleum Company*, 775 P.2d 1021, 1024 (Wyo.1989); *Eblen v. Eblen*, 68 Wyo. 353, 234 P.2d 434 (1951). The invocation of laches is appropriate only where there is an inexcusable delay resulting in injury, prejudice, or disadvantage to others. *Moncrief*; *Big Piney Oil and Gas Company v. Wyoming Oil and Gas Conservation Commission*, 715 P.2d 557 (Wyo.1986); *Hartnett v. Jones*, 629 P.2d 1357 (Wyo. 1981). Again, we cannot discern from this record any unnecessary delay. Furthermore, the Respondent has failed to demonstrate, in any manner, how the alleged delay worked to his disadvantage. No claim is made that he was prevented from presenting evidence, either documentary or testimonial, in his behalf. Furthermore, the record discloses that any material delay that occurred throughout this entire proceeding was caused by the Respondent's own requests for continuance or additional hearings and by his actions in failing to

respond to complaints filed against him. Nothing indicates that the delay is attributable to the actions of the Grievance Committee. It is axiomatic that the equitable doctrine of laches can be invoked only against the party causing the inequity and is not to be applied to the advantage of a wrongdoer. "He who seeks equity must come into the court with clean hands." *Lewis v. State Board of Control*, 699 P.2d 822, 827 (Wyo.1985). The Respondent does not come into the court with "clean hands." He has failed to demonstrate the elements of laches and, under the circumstances of the case, we cannot agree that the Respondent is justified in invoking the doctrine, nor can we afford him any relief by applying it. See *Moncrief.*

In addition to the foregoing issues, the Respondent attacks, in his Allegation of Errors and Brief in Answer under the subtitle, Exceptions to Findings of Fact and Legal Conclusions, the Findings and Recommendations in the Report of the Grievance Committee. At the time that most of the violations asserted against the Respondent allegedly occurred, his conduct as an attorney was governed by *Rule 20, Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming.* The balance of the violations are controlled by the *Rules of Professional Conduct for Attorneys at Law.* We have given the record careful consideration, and we agree with the Respondent with respect to five of the eleven counts of alleged misconduct. We conclude that those five counts are not supported in this record by clear and convincing evidence. *Rule VI(h), Disciplinary Code for the Wyoming State Bar; Mendicino*, 565 P.2d 460.

This court has defined clear and convincing evidence as "[t]hat kind of proof which would persuade a trier of fact that the truth of the contention is highly probable. *MacGuire v. Harriscope Broadcasting Company*, Wyo., 612 P.2d 830, 839 (1980)." *Story v. Wyoming State Board of Medical Examiners*, 721 P.2d 1013, 1014 (Wyo.1986), *cert. denied* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986); *Lynch v. Patterson*, 701 P.2d 1126 (Wyo.1985); *Matter of Parental Rights of GP*, 679 P.2d 976 (Wyo.1984); *Thomasi v. Koch*, 660 P.2d 806 (Wyo.1983). Oregon, in obvious accord with the Wyoming definition, has adopted a similar standard for attorney disciplinary proceedings by holding that "[c]lear and convincing evidence means that the truth of the facts asserted is highly probable." *In re Conduct of Johnson*, 300 Or. 52, 707 P.2d 573, 576 (1985); *In re Conduct of Chambers*, 292 Or. 670, 642 P.2d 286 (1982). The definition of clear and convincing evidence that we have adopted, although broad and subjective in nature, provides adequate guidance to the finder of fact in most circumstances. Kansas, we note, has furnished some objective criteria, with respect to witnesses and their testimony, stating that clear and convincing evidence means:

> "[T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue." *Weigand v. Union National Bank of Wichita*, [227 Kan. 747], 610 P.2d 572, 577 (Kan.1980).

*Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816 (1979); *Gonzalez v. Allstate Insurance Company*, 217 Kan. 262, 535 P.2d 919 (1975), quoting from *In re Shirk's Estate*, 194 Kan. 424, 399 P.2d 850, *reh. denied* 194 Kan. 671, 401 P.2d 279 (1965). This articulation of objective criteria we perceive to be helpful in applying the clear and convincing evidence standard, and it is adopted for the guidance of the Grievance Committee in applying that standard. We have used it in our evaluation of the testimony in this record.

It also is important to note that, when the Grievance Committee is evaluating multiple claims or charges of professional misconduct in a single proceeding, the clear and convincing evidence standard must be applied consistently and constantly to every charge against the practitioner.

The Grievance Committee should guard against any tendency to accept, as sufficient, proof that does not meet that standard as to any charge. We are sensitive to a human tendency to perhaps diminish or relax requirements as to some, or one, of several charges because of the satisfaction as to the nature of the evidence with respect to others.

 We have concluded that the evidence in this record does not satisfy the clear and convincing evidence standard with respect to five of the charges against the Respondent. In one of those instances, the Grievance Committee could not produce the complaining witness. The evidence then consisted of the testimony of the investigator for the Grievance Committee, who testified as to statements made by the Respondent and laid foundation for written notes prepared by a former legal assistant employed by the Respondent. The legal assistant had died prior to the hearing. In the course of the investigator's testimony, the Grievance Committee also received copies of various court documents relating to an action initiated by the Respondent on behalf of this particular client in an action by the client against the Respondent. The Respondent objected to the investigator's testimony asserting that the former legal assistant was dead and that inhibited his opportunity to defend against the evidence. He objected to the court documents that were submitted on the basis of their lack of competency and relevancy to the proceeding. We agree that the investigator's testimony with respect to the materials prepared by the former legal assistant is hearsay and should not have been received absent the application of a recognized exception to the rule excluding hearsay. *Rules 801(c), 802, 803, 804, W.R.E.* Counsel for the bar did not present any appropriate exception to the rule excluding hearsay. In the absence of any help from the record in this regard, we conclude that the testimony relating to the notes of the Respondent's former legal assistant is not admissible. *Rule 802, W.R.E.* In addition, in light of the Respondent's objection to the copies of the court documents, counsel for the bar should have presented a theory with respect to relevancy and competency. Relevancy and competency were not obvious, and some further foundation was necessary to justify the admission of this evidence. *Rules 401, 402, W.R.E.* There was no evidence other than the hearsay and the court documents relating to this particular charge, and even an examination of the documents does not satisfy the clear and convincing evidence standard. Consequently, we conclude that this charge was not properly supported.

 With respect to two counts relating to another client, even though that client appeared as a witness, he substantially refused to testify with respect to the allegations against the Respondent. The former client asserted that the violations, if any, had occurred much too long ago for him to have any adequate recollection of them. No other evidence was produced for the Grievance Committee regarding the conduct to which these two charges related. Finally, with respect to two other charges relating to a single client, the evidence found in the record leaves the impression that it is arguable whether the Respondent acted improperly under these circumstances. Evidence of that quality is not sufficient to persuade a trier of fact that the truth of the contention is highly probable. Consequently, it is our conclusion that Counts I, II, III, IX, and X are not adequately supported by clear and convincing evidence.

 In connection with Count IV in the complaint, we note that no client, or other entity, ever filed an actual complaint with the Grievance Committee. A witness did appear and testify, providing the Committee and this court with clear and convincing proof of the events justifying that count in the complaint. We sustain that claim in the absence of a complaint filed with the Grievance Committee. The Grievance Committee can initiate a complaint against an attorney *sua sponte,* just as this court might. No complaint from a client is necessary to trigger the inquiry by the Grievance Committee, although the evidence to sustain any such charge must also

meet the clear and convincing evidence standard.

█ Our examination of the record satisfies us that Counts IV, V, VI, VII, VIII, and XI alleging professional misconduct are supported by clear and convincing evidence, or by the admissions of the Respondent, and these six counts justify the sanction of disbarment recommended by the Grievance Committee. Count IV related to an instance in which the Respondent agreed to represent a client on a charge of driving while under the influence as to which, by the client's own testimony, he intended to enter a plea of not guilty. A date for trial was set, but the Respondent, because of various complications relating to the fact that the client resided out of state, failed to confirm that the client was properly notified of the trial date. The client failed to appear for that reason and, because of the unexplained failure to appear, the court issued a bench warrant for his arrest and caused the forfeiture of his $550 appearance bond. Ultimately, the client returned to Wyoming, entered a plea of guilty, and paid additional costs to eliminate the bench warrant. The evidence is clear and convincing that the Respondent neglected a legal matter entrusted to him by his client in violation of *Disciplinary Rule DR6–101(A)(3)*.

█ Count V relates to the filing of a personal injury complaint by the Respondent on behalf of a client in Campbell County Court. The defendant submitted a request for admissions, in accordance with *Rule 37, W.R.C.P.,* that required a response from either the Respondent or his client within thirty days. No response was filed, and the county court found the matters covered in the requests for admissions to be deemed to have been admitted, which ultimately justified a summary judgment adverse to the Respondent's client. The Respondent admits these facts, but contends that he paid the client $6,000 in settlement of his malpractice claim. Even though the Respondent's action in rectifying this dereliction of duty indeed was appropriate, we conclude that he was remiss and neglected a legal matter entrusted to

him by his client in violation of *Disciplinary Rule DR6–101(A)(3)* promulgated by this court.

█ The next count, Count VI, relates to an instance in which the Respondent was retained to defend a client in a suit that had been filed against the client. The Respondent properly answered the complaint and then requested an additional twenty days in which to file affirmative defenses in a counterclaim. The court granted the twenty days for the preparation of an amended answer to assert defenses and a counterclaim, but the Respondent never answered the amended answer. Further, neither he nor the client appeared at the trial, which resulted in the imposition of sanctions in the amount of $1,000 against both of them as well as a highly unfavorable judgment that was entered based solely upon the pleadings and the record established up to the time of trial. The Respondent admits these facts. Without providing an explanation in his brief, he defends his conduct by asserting that further representation of this client would have constituted violations of *§§ 3.1, 3.3, and 3.4, Rules of Professional Conduct for Attorneys at Law.* Without any justification to refuse the Respondent's admission, we are compelled to accept that admission of the underlying facts and to again agree with the conclusion of the Grievance Committee that the Respondent neglected a legal matter entrusted to him contrary to *Disciplinary Rules DR6–101(A)(2) and (3).*

With respect to Count VII, the Respondent again admits to neglecting a legal matter entrusted to him by his client. The product of the Respondent's neglect in that instance was that the client's claim ultimately was dismissed with prejudice. We accept the Respondent's admission, and we agree with the conclusion of the Grievance Committee that the conduct admitted did constitute neglect of a legal matter entrusted to the Respondent contrary to *Disciplinary Rules DR6–101(A)(2) and (3).*

█ The misconduct set forth in Count VIII, which relates to the case of *Ogle v. Caterpillar Tractor Co.,* 716 P.2d 334 (Wyo.1986), consists of a more complex course of conduct. The record reflects

summary judgments entered against the Respondent's client in the trial court, which were affirmed in part and reversed and remanded in part by this court. The Respondent obviously acted contrary to the *Disciplinary Code* by failing to communicate properly and adequately with his client regarding the status of the case and his client's concerns. The progress of the case was consistent with the Respondent's approach to other matters that had been entrusted to him. Among other things, he failed to file materials in opposition to the defendants' motions for summary judgment and, after the case was remanded, he checked out the court file and kept it for a period of several months thus, in effect, halting the progress of the case. The Respondent admits the conduct related with respect to this count, and the conclusion of the Grievance Committee that his conduct constituted neglect of a legal matter entrusted to him contrary to *Disciplinary Rules DR6–101(A)(2) and (3)* is, again, adequately supported by the admission of the Respondent.

■ Count XI, the last of the six as to which we agree with the Report of the Grievance Committee, arises from the Respondent's conduct while acting on his own behalf and not from the dereliction of any duty owed a client. This violation is found under the *Rules of Professional Conduct for Attorneys at Law.* In November of 1986, the Respondent was convicted of driving a motor vehicle while under the influence of intoxicating liquor. He was sentenced to five months in jail, fined $750, and assessed $10 in court costs. All but ten days of the jail sentence was suspended, and $300 of the total fine was suspended, subject to his compliance with certain conditions imposed by the court. The Respondent appealed this judgment, and he requested the court reporter to prepare a transcript of the proceedings. At that time, he gave the court reporter a check for $200 as a deposit to be credited against the charge for services. The court reporter prepared the transcripts, and a balance of $5.98 was due after crediting the deposit. On July 10, 1987, the Respondent's check was returned marked "Insufficient Funds." The reporter then caused a "five-day let-

ter," demanding payment, to be sent by the police department. The Respondent replied to that demand by mailing a money order in the amount of $200. The balance of $5.98 had not been paid at the time of the hearing before the Grievance Committee despite letters of request from the court reporter. The Respondent admits these allegations, and we agree that his actions under the circumstances reflect adversely on his honesty, trustworthiness, and fitness to practice law contrary to the provisions of *Rule 8.4(b), (c), (d), Rules of Professional Conduct for Attorneys at Law.*

■ In summary, we are satisfied that, as to the six counts upon which we sustain the Findings of Fact and Conclusions of Law of the Grievance Committee, the Respondent violated his responsibilities as an attorney at law in the State of Wyoming contrary to the rules promulgated by this court. The Respondent's admissions to the charged conduct are the equivalent of the clear and convincing evidence that is required by *Rule VI(h) of the Disciplinary Code for the Wyoming State Bar.* We also are satisfied that, with respect to the substantive allegations upon which the proceeding was conducted, jurisdiction was proper, and the Respondent has failed to demonstrate how he suffered any constitutional deprivation with respect to the disbarment proceedings. With respect to the assessment of costs against him, however, the record does not demonstrate sufficient notice to the Respondent to satisfy the requirements of due process and, therefore, while we order the disbarment of the Respondent, the matter of costs is remanded to the Grievance Committee for the conduct of any further hearing it deems appropriate in order to assess such costs.

Therefore, it is

ORDERED that the Report, Findings and Recommendation of the Grievance Committee be approved to the extent set forth above; and it further is

ORDERED that William D. Norman be, and he hereby is, disbarred from the practice of law in the State of Wyoming; and it further is

ORDERED that the Grievance Committee of the Wyoming State Bar shall conduct

a further hearing for the sole purpose of providing evidence of costs to be assessed against the Respondent and only after providing notice of the proceeding to the Respondent and furnishing the Respondent a proper opportunity to contest the assessment of costs; and it further is

ORDERED that the Respondent shall be assessed costs in the amount to be determined upon the Report of the Grievance Committee after the additional hearing; and it further is

ORDERED that the Clerk of this Court docket the Report of the Grievance Committee of the Wyoming State Bar, and all supporting papers of the Grievance Committee, as well as this order, as a matter coming regularly before this Court as a public record; and it further is

ORDERED that the Clerk of this Court cause a copy of this Order of Disbarment from the Practice of Law to be served upon William D. Norman by certified mail, return receipt requested; and it further is

ORDERED that the Clerk of this Court transmit copies of this Order of Disbarment from the Wyoming State Bar to the members of the Grievance Committee of the Wyoming State Bar and to the Clerks of the District Court, Sixth Judicial District, Gillette, and Seventh Judicial District, Casper.

APPENDIX A

STATE OF WYOMING

COUNTY OF LARAMIE

S.S.

BEFORE THE GRIEVANCE COMMITTEE

WYOMING STATE BAR

STATE OF WYOMING

In Re WILLIAM D. NORMAN, Respondent.

Supreme Court Docket No. D–87–2

Docket Nos. 68–82, 18–84, 50–85, 17–86, 23–86, 59–86, 88–86, 89–86 and 84–87

REPORT, FINDINGS AND RECOMMENDATION

The Attorney General's Office filed a COMPLAINT FOR FORMAL DISCIPLI-NARY PROCEEDINGS in the Matter of WILLIAM D. NORMAN, Docket Nos. 68–82, 18–84, 50–85, 17–86 and 23–86 before the Grievance Committee of the Wyoming State Bar on December 15, 1986. The Attorney General's Office filed a AMENDED COMPLAINT FOR FORMAL DISCIPLI-NARY PROCEEDINGS in the Matter of WILLIAM D. NORMAN, Docket Nos. 68–82, 18–84, 50–85, 17–86, 23–86, 59–86, 88–86 and 89–86, before the Grievance Committee on December 30, 1986. On January 29, 1987, the Attorney General's Office filed a MOTION FOR ENTRY OF DEFAULT AND RECOMMENDATION OF DISCIPLINE. On February 12, 1987, the Grievance Committee filed an ENTRY OF DEFAULT AND RECOMMENDATION OF DISCIPLINE and sent the matter to the Wyoming Supreme Court. On March 12, 1987, the Court entered its ORDER REMANDING TO THE GRIEVANCE COMMITTEE OF THE WYOMING STATE BAR, ordering the Committee to hold a hearing in the matter. The matter was thereafter set for hearing on May 15, 1987. On May 13, 1987, the Respondent filed a SPECIAL APPEARANCE AND MOTION TO DISMISS. By ORDER dated May 13, 1987, the Committee continued the matter, and on May 29, 1987, the Committee entered its ORDER DISMISSING AMENDED COMPLAINT, whereby the amended complaint was dismissed without prejudice. On December 2, 1987, the Attorney General's Office filed a COMPLAINT FOR FORMAL DISCIPLINARY PROCEEDINGS in the Matter of WILLIAM D. NORMAN, Docket Nos. 68–82, 18–84, 50–85, 17–86, 23–86, 59–86, 88–86, 89–86 and 84–87. On March 8, 1988, the Respondent filed MOTIONS IN RESPONSE TO ABOVE COMPLAINTS. On March 29, 1988, the Attorney General's Office filed BAR COUNSEL'S RESPONSE AND OPPOSITION TO RESPONDENT–ATTORNEY'S MOTION TO DISMISS, supported by a MEMORANDUM OF LAW IN SUPPORT OF BAR COUNSEL'S RESPONSE AND OPPOSITION. The motion was set for hearing on

April 14, 1988. On May 3, 1988, the Committee entered its ORDER DENYING MOTION TO DISMISS. By NOTICE OF SETTING dated May 3, 1988, the hearing was set for June 29, 1988. On June 10, 1988, the Attorney General's Office filed a MOTION FOR ENTRY OF DEFAULT. On June 13, 1988, the Committee entered its NOTICE that default on the complaint would be entered if Respondent failed to answer the complaint. On June 19, 1988, Respondent filed his ANSWER.

A hearing was held before the Committee on June 29, 1988. Members of the Committee present at the hearing were David F. Palmerlee, Chairman, Dennis L. Sanderson, Dean W. Borthwick, Kathleen A. Hunt and Joseph E. Vlastos. The Respondent represented himself. The Attorney General's Office was represented by Sylvia Lee Hackl.

At the start of the hearing, Respondent made a motion to dismiss the complaint. Said motion is hereby denied.

The following objections were made during the course of the hearing:

On page 151 of the transcript, Respondent objects to various court pleadings being admitted as conclusory proof against himself. On page 166 of the transcript, in what can be taken as a continuing objection, Respondent stipulates that they are court documents but protests their competency and relevancy. On page 167 of the transcript, the Committee admitted the documents, but notes here that they are admitted for the sole purpose of showing what they show on their face, that is, that documents were filed in certain courts on certain days, or that the court took a certain action in certain cases, without any reliance on or proof of the underlying factual allegations within the documents. With regard to the exhibits listed below as noted, this is the limited purpose for which these documents have been admitted.

On page 164 of the transcript, Respondent objects to conclusory proof of his paralegal's, Dean Catsimanes', notes since Mr. Catsimanes is deceased. Said objection is hereby sustained.

On pages 174–175 of the transcript Respondent reiterates his former objection and further adds that the complainants were not interviewed nor had they provided affidavits to the Committee. The first objection has already been ruled on. Said further objection is overruled.

The following exhibits were offered and accepted into evidence at the formal hearing:

EXHIBIT I-1—SMALL CLAIMS CIVIL COMPLAINT, Hoskins v. McKenzie, Docket 11082 in Natrona County Court, with SHERIFF'S RETURN, and STIPULATION FOR DISMISSAL—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-2—COMPLAINT FOR ASSAULT AND BATTERY, Hoskins v. McKenzie, Natrona County Court, Civil Action No. 13260—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-2A—MOTION TO QUASH SUMMONS AND DISMISS COMPLAINT, Civil Action No. 13260—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-2B—ORDER, Civil Action No. 13260—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-3—CIVIL COMPLAINT, Hoskins v. Norman, Natrona County Court, Civil Action No. 16535, SUMMONS in same action, and RETURN in same action—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-3A—MOTION TO SET ASIDE DEFAULT in Civil Action No. 16535, with ANSWER in said action—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-3B—MOTION FOR SUMMARY JUDGMENT, Civil Action No. 16535—accepted into evidence for the limited purpose set forth above.

EXHIBIT I-3C—AFFIDAVIT of defendant Norman in Civil Action No. 16535, with copy of Catsimanes notes, receipt from Norman to Hoskins showing payment of $110, cashier's check from McKenzie to Hoskins, and FULL AND FINAL RELEASE OF ALL CLAIMS signed by Bon-

nie Hoskins and Thomas Hoskins—accepted into evidence for the limited purpose set forth above.

EXHIBIT II-1—ORDER FOR MEETING OF CREDITORS AND FIXING TIMES FOR FILING OBJECTIONS TO DISCHARGE AND FOR FILING COMPLAINTS TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS, COMBINED WITH NOTICE THEREOF AND OF AUTOMATIC STAY, Case No. 83-00735, in the U.S. Bankruptcy Court for the District of Wyoming, In re Willie Mapp and Susan Rae Mapp.

EXHIBIT III-1—Respondent's answer to Grievance Committee to letter of complaint by the Mapps.

EXHIBIT IV-1—Wyoming Highway Patrol Citation issued to Melvin A. Fischer.

EXHIBIT IV-4—JUDGMENT AND SENTENCE, Docket No. 84-CA8-5094, STATE OF WYOMING vs. FISCHER, in Natrona County Court.

EXHIBIT V-1—ORDER GRANTING MOTION, Civil No. 85CV-122, 85-531, ARVY vs. SANDS CORPORATION, in Campbell County Court—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-1—COMPLAINT, Civil Action No. 6045, PARRIOTT vs. HEDLUND, Ninth Judicial District Court—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-2—Answer to Civil Action # 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-3—ANSWER, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-4—ORDER FOR PRETRIAL CONFERENCE, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-5—MOTION TO CONTINUE PRE-TRIAL CONFERENCE, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-6—ORDER CONCERNING PRETRIAL CONFERENCE, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-7—DEFENDANT'S PRETRIAL MEMORANDUM, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-8—PRETRIAL CONFERENCE REPORT AND ORDER, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-9—ORDER, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VI-10—JUDGMENT, Civil Action No. 6045—accepted into evidence for the limited purpose set forth above.

EXHIBIT VII-1—COMPLAINT, Civil Action No. 58599, in the Seventh Judicial District Court, WORMAN vs. JOHNSTON FUEL LINERS, INC., ROSE LEASING CORPORATION, JOHN JAY ARRELLANO, KIM MELROSE—accepted into evidence for the limited purpose set forth above.

EXHIBIT VII-2—MOTION TO DISMISS, Civil Action No. 58599—accepted into evidence for the limited purpose set forth above.

EXHIBIT VII-3—ORDER, Civil Action No. 58599—accepted into evidence for the limited purpose set forth above.

EXHIBIT VII-4—MOTION TO DISMISS WITH PREJUDICE, Civil Action No. 58599 —accepted into evidence for the limited purpose set forth above.

EXHIBIT VII-5—ORDER, Civil Action No. 58599—accepted into evidence for the limited purpose set forth above.

EXHIBIT IX-1—Copies of checks signed by Frances Elfering made out to Bill Norman and the reverse side of those checks showing Respondent's endorsement.

EXHIBIT IX-A—Letter signed by Frances Elfering.

COMMITTEE EXHIBIT 1—Letter of complaint signed by Willie Mapp and Susan Mapp addressed to the Wyoming State

Bar—accepted into evidence for the limited purpose set forth above.

COMMITTEE EXHIBIT 2—Letter of complaint signed by Kerri Ogle and Tim Ogle addressed to the Wyoming State Bar—accepted into evidence for the limited purpose set forth above.

The Committee finds the following facts were proved at the hearing by clear and convincing evidence:

## FINDINGS OF FACT

1. Respondent is a member of the Wyoming State Bar, who maintained an office in Casper, Wyoming.

## COUNT I

2. In July of 1981, Thomas V. Hoskins retained Respondent to file a lawsuit on his behalf for an injury he had suffered as a result of a fight over a traffic accident.

3. Mr. Hoskins paid Respondent $110.00.

4. On October 20, 1981, Respondent filed a complaint for assault and battery on behalf of Mr. Hoskins in Natrona County Court.

5. Pursuant to W.S. 1–3–501(a)(b)(B), the statute of limitations for bringing a civil action for assault and battery is one year.

6. At the time Respondent accepted the retainer from Mr. Hoskins in July of 1981, the statute of limitations for bringing a civil action for assault and battery had expired.

7. At the time Respondent accepted the retainer from Mr. Hoskins, he knew the statute of limitations for bringing a civil action for assault and battery had expired.

8. At the time Respondent accepted the retainer from Mr. Hoskins in July of 1981, he did not tell Mr. Hoskins that the statute of limitations for bringing a civil action for assault and battery had expired.

9. Respondent handled a legal matter without preparation adequate in the circumstances.

## COUNT II

10. On or about October 26, 1983, Respondent agreed to represent Mr. and Mrs. Willie Mapp on a bankruptcy matter.

11. In the Mapp bankruptcy, a 341 hearing was scheduled in Casper on December 28, 1983 at 9:00 a.m.

12. Respondent's office had notice of the 341 hearing scheduled for December 28, 1983.

13. Mr. and Mrs. Mapp attended the 341 hearing on December 28, 1983.

14. Respondent did not attend the 341 hearing on December 28, 1983 on behalf of his client.

15. Respondent did not make arrangements for the hearing to be continued or for his clients to be represented at the hearing.

16. The 341 hearing was held and the Mapps did not have the benefit of having retained counsel present.

17. Respondent neglected a legal matter entrusted to him by his clients.

## COUNT III

18. In early December, 1983, Respondent agreed to represent Willie Mapp on pending criminal charges of DUI and careless driving.

19. Respondent and Willie Mapp had an attorney/client relationship with respect to these criminal charges.

20. Mr. Mapp's criminal trial was scheduled for December 20, 1983 at 10:00 a.m.

21. On December 20, 1983 Respondent was not in town but asked his legal assistant, Lowell Stephens, to make arrangements for Earl R. Johnson, Jr. to represent Mr. Mapp at his trial.

22. Mr. Stephens erroneously advised Mr. Mapp that his trial had been changed from 10:00 a.m. until either 1:00 p.m. or 3:00 p.m. on December 20, 1983.

23. Mr. Stephens arranged for Mr. Johnson to represent Mr. Mapp at his trial on the afternoon of December 20, 1983.

24. The trial in fact had been scheduled for 10:00 a.m. on December 20, 1983.

25. Mr. Mapp did not appear at his trial.

26. Mr. Mapp forfeited a $300 bond.

27. Respondent neglected a legal matter entrusted to him by his client.

## COUNT IV

28. On or about August 4, 1984, Respondent agreed to represent Melvin Arthur Fischer on a DUI charge.

29. Respondent charged Mr. Fischer a fee of $250.00.

30. On or about January 29, 1985 someone, either Earl R. Johnson, Jr., Lowell Stephens, or Respondent himself, on Respondent's behalf, advised the court that he and his client were ready to go to trial.

31. In fact, Mr. Fisher had not been notified of the trial date, and Respondent was unaware that he had not been notified.

32. Mr. Fischer's bond of $550.00 was forfeited.

33. On February 1, 1985, a bench warrant was issued for the arrest of Mr. Fischer.

34. Respondent notified Mr. Fischer, who was in Missouri, on the morning of his rescheduled trial date. Although Mr. Fischer had intended to fight the charge against him, as a result of the untimely notification, he told Respondent to enter a guilty plea for him.

35. At all times Respondent had information as to Mr. Fischer's whereabouts.

36. Mr. Fischer made several attempts to contact Respondent about a trial date.

37. Respondent engaged in conduct that is prejudicial to the administration of justice and adversely reflects on his fitness to practice law.

38. Respondent neglected a legal matter entrusted to him by his client.

## COUNT V

39. Respondent filed a personal injury complaint on behalf of Don Arvy in Campbell County Court.

40. The lawyer representing a defendant, Sands Corporation, filed a request for admissions pursuant to Rule 37 of the Wyoming Rules of Civil Procedure.

41. Respondent failed to answer the request for admissions within the allotted 30 days.

42. The judge found that the defendant's questions were deemed admitted by the plaintiff.

43. The admissions were detrimental to the plaintiff's case. Once the defendant's questions were deemed admitted, the case was ripe for summary judgement and in fact summary judgment was granted for the defendant.

44. Respondent neglected a legal matter entrusted to him by his client.

## COUNT VI

45. On January 31, 1985, a suit was filed against Woodrow Michael Hedlund.

46. Mr. Hedlund retained Respondent to represent him.

47. On March 25, 1985, Respondent filed an answer on behalf of Mr. Hedlund and requested an additional 20 days to file affirmative defenses and counterclaims.

48. On May 8, 1985, the Honorable Robert B. Ranck by order set a pretrial conference for June 27, 1985. The order, which was filed and served by mail on all counsel on May 9, 1985, required a pretrial memorandum according to the format set out in the order.

49. On June 24, 1985, Respondent filed a motion for continuance of the pretrial conference. Judge Ranck granted the motion during a telephone conference. By way of order dated June 27, 1985, and filed and served on counsel on June 28, 1985, Respondent was given until July 12, 1985 to file the pretrial memorandum.

50. On July 12, 1985, Respondent filed a pretrial memorandum. In the memorandum Respondent requested that he be allowed to amend his answer to include affirmative defenses and counterclaims.

51. On July 24, 1985, Judge Ranck filed a "Pretrial Conference Report and Order."

Judge Ranck allowed Respondent to amend his answer and denied Respondent's request to assert a counterclaim. Trial was set for September 10, 1985.

52. Respondent never filed an amended answer.

53. On September 10, 1985, Respondent and Mr. Hedlund failed to appear for trial. Respondent had not informed the court that he was having trouble ensuring his client's presence for trial, although he was aware on Friday that Mr. Hedlund had left for Alaska, and trial did not start until Tuesday of the next week.

54. On September 16, 1985, Judge Ranck imposed sanctions on Respondent and Mr. Hedlund in the amount of $1,000.00.

55. On December 16, 1985, Judge Ranck ordered that the plaintiff recover from Mr. Hedlund $6,709.10, together with attorney's fees and costs of $530.00, for the sum of $7,239.10, plus interest and further ordered that the plaintiff recover $5,000.00 from Mr. Hedlund as punitive damages for fraud, together with $500.00 attorney's fees, plus interest. The above was based on the pleadings and matters of record, plus the plaintiff's testimony at trial, Respondent and Mr. Hedlund not being present.

56. Respondent did not tell Mr. Hedlund about the conditions relating to the payment of the $1,000.00 sanction.

57. Respondent's conduct with respect to not appearing for trial and not amending his answer despite two opportunities to do so was prejudicial to the administration of justice.

58. In the overall handling of Mr. Hedlund's matter, Respondent neglected a legal matter entrusted to him.

59. In failing to amend the answer, failing to take depositions, failing to submit an adequate pretrial memorandum as required by court rules, and failing to appear for trial, Respondent failed to adequately prepare for a legal matter under the circumstances.

## COUNT VII

60. On March 18, 1985, Respondent filed a complaint on behalf of his client, Harold Truman Worman, in a dispute concerning the purchase of a 1981 Peterbilt truck from Rose Leasing Corporation and Kim Melrose. Respondent also named John Jay Arrellano and Johnston Fuel Liners, Inc., as defendants in the complaint.

61. On May 7, 1985, defendant Johnston Fuel Liners, Inc., and John Jay Arrellano answered the complaint and as affirmative defenses, claimed: (1) that Respondent's complaint failed to state a claim upon which relief could be granted; (2) that plaintiff was in default on his payments and that defendant Arrellano had a legal right to repossess the truck; and (3) that the plaintiff was estopped from any claim.

62. On May 15, 1985 defendant Johnston Fuel Liners, Inc., and Arrellano filed a motion to dismiss.

63. On May 20, 1985, defendants Johnston Fuel Liners, Inc., and Arrellano requested and received a hearing date of June 5, 1985 at 3:00 p.m. on the motion to dismiss.

64. On June 9, 1985, as a result of the hearing on the motion to dismiss, the Honorable Harry E. Leimback gave Respondent until June 25, 1985, to amend the complaint "so as to state a claim upon which relief may be granted."

65. On June 26, 1985, defendants Johnston Fuel Liners, Inc., and Arrellano filed a motion to dismiss with prejudice because Respondent had not filed an amended complaint.

66. On July 8, 1985, Judge Leimback dismissed the complaint with prejudice because Respondent had not filed an amended complaint.

67. Respondent admitted he did not handle this matter properly.

68. Respondent neglected a legal matter entrusted to him by his client resulting in his client's complaint being dismissed with prejudice.

## COUNT VIII

69. In the fall of 1983, Tim Ogle retained Respondent to represent him in a personal injury case stemming from an incident which occurred on January 9, 1980.

70. Mr. Ogle contacted Respondent in October of 1983, and was told that the case would be filed soon. Mr. Ogle was aware that under the applicable statute of limitations, his case had to be filed by January 9, 1984.

71. Mr. Ogle attempted to contact Respondent on five or six occasions, and left messages, but never heard from him.

72. On January 8, 1984, Mr. Ogle drove to Casper from his home in South Dakota to check on the progress of his case. He arrived at Respondent's office around 9:00 a.m. on January 9, 1984. Mr. Ogle waited in Respondent's office all day while a complaint was prepared. Mr. Ogle and Respondent's legal assistant, Lowell Stephens, then drove to Rawlins, and filed the complaint in the district court for Carbon County around 4:00 p.m.

73. Mr. Ogle continued to check with Respondent concerning the progress of his case. Mr. Ogle had difficulty contacting Respondent, so he asked that copies of all documents be sent to him for his information. Mr. Ogle received very few documents in response to his request.

74. In August of 1984, one of the defendants, Caterpillar Tractor Co., filed a motion for summary judgment. On September 24, 1984, the district court entered an order setting the matter for hearing. Mr. Ogle knew of the motion, and attended the hearing. Mr. Norman did not file any materials in opposition to the motion. On the date of the hearing, December 21, 1984, Mr. Norman handed a brief to the court. On January 11, 1985, the court signed an order granting summary judgment.

75. On January 31, 1985, Mr. Norman filed a notice of appeal. The Wyoming Supreme Court dismissed the appeal on March 13, 1985, on the grounds that the appeal was not from a final order as required by Rule 54(b), W.R.C.P.

76. After the case was returned to district court, the other defendant, Wyoming Machinery Co., filed a motion for summary judgment which was substantially similar to the previous motion filed by Caterpillar Tractor Co. Mr. Norman did not file any materials in opposition to the motion. On May 31, 1985, the district court granted the motion for summary judgment. The case was then appealed to the Supreme Court.

77. Mr. Ogle attempted to contact Respondent regarding the case on numerous occasions, but was unable to reach Respondent until the summer of 1985. At that time, Respondent refused to furnish Mr. Ogle with any information regarding the case unless he received $15,000.00 for expenses.

78. On March 19, 1986, the Wyoming Supreme Court issued its opinion in the case of *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334 (Wyo.1986). The Court affirmed in part and reversed and remanded in part the decision of the district court.

79. At this time Mr. Ogle read in the newspaper that his case had been to the Wyoming Supreme Court.

80. On April 7, 1986, the Court issued its mandate, remanding the case for further proceedings.

81. In September of 1986, Respondent checked out the court file from the clerk of the district court in Carbon County. Respondent kept the file for several months, and it was unavailable to other attorneys interested in the case. The file was returned to the clerk in February of 1987. In January of 1988, Respondent filed a motion to compel discovery. A hearing on the motion was held in June of 1988.

82. Respondent neglected to communicate with Mr. Ogle regarding the status of the case and the client's concerns.

83. In his overall handling of Mr. Ogle's case, Respondent handled the legal matter without preparation adequate in the circumstances and neglected a legal matter entrusted to him by his client.

## COUNT IX

84. On or about September 16, 1985, Frances Elfering retained Respondent to assist her in transferring stock to her from her mother's estate.

85. Mrs. Elfering paid Respondent a fee of $400.00 to represent her.

86. Mrs. Elfering contacted Respondent several times to check on the progress of the stock transfer. Respondent said he would act immediately, but nothing was done.

87. On or about June 16, 1986, Mrs. Elfering completed the stock transfer with the assistance of another individual, a neighbor named Ray Serbyn.

88. Respondent neglected a legal matter entrusted to him by his client.

## COUNT X

89. On or about April 14, 1986, Frances Elfering retained Respondent to represent her on a DUI charge.

90. Mrs. Elfering paid Respondent a fee of $200.00.

91. On June 4, 1986, Mrs. Elfering entered a plea of guilty to the charge against her. Her understanding of the sentence imposed against her was that she was to pay $200.00 to a charitable organization and perform community service.

92. Respondent did not provide Mrs. Elfering with a copy of the judgment and sentence. In fact, the judgment and sentence specified that in addition to the donation to the charitable organization and community service, Mrs. Elfering was to be on unsupervised probation and was to obtain counseling.

93. On July 8, 1986, a bench warrant was issued for the arrest of Mrs. Elfering, due in part to her failure to comply with the counseling requirement. She was arrested on August 24, 1986. After she was released on her own recognizance, she contacted Respondent and asked him to represent her at the court hearing scheduled for August 28, 1986.

94. Respondent failed to appear at the hearing on August 28, 1986. The hearing was rescheduled for September 24, 1986. Mrs. Elfering contacted Respondent at his home; he assured her that he would be present for the September hearing.

95. Respondent failed to appear at the hearing on September 24, 1986. The court attempted to contact Respondent but his telephone had been disconnected. The hearing was then rescheduled for October 6, 1986.

96. Respondent did appear for the hearing on October 6, 1986. At that time, Mrs. Elfering advised the court that she had never received a copy of the judgment and sentence. The remainder of the sentence was then suspended.

97. Respondent neglected a legal matter entrusted to him by his client.

## COUNT XI

98. In November of 1986, Respondent was convicted of driving a vehicle while under the influence of intoxicating liquor, in violation of section 31–5–233(a), W.S. 1977, as amended. On December 19, 1986, he was sentenced to five months in jail, fined $750.00 and assessed $10.00 in court costs. The court suspended all but ten days of the jail sentence, and all but $300.00 of the fine, on the condition that Respondent comply with several conditions. The judgment and sentence was filed on March 2, 1988.

99. Respondent appealed his conviction to the district court for the Sixth Judicial District. Oral argument was held before the Honorable Terrence L. O'Brien on April 10, 1987. At Respondent's request, the oral argument was reported by Melanie L. Humphrey-Watkins, the official court reporter.

100. On May 5, 1987, the court issued an order affirming Respondent's conviction. The order was entered the next day. On May 20, 1987, Respondent filed a notice of appeal.

101. Two working days before the record on appeal was due to be docketed with the Supreme Court, Respondent con-

tacted Ms. Humphrey–Watkins, asking that she prepare a transcript of the oral argument. Respondent gave Ms. Humphrey–Watkins a check for $200.00 as a deposit.

102. Ms. Humphrey–Watkins prepared the transcript. On June 30, 1987, she sent Respondent a final bill for the remaining charges, $5.98.

103. On July 10, 1987, Ms. Humphrey–Watkins was advised that Respondent's check had been returned for insufficient funds. On July 16, she sent him a "five-day letter" from the police department requesting payment, which letter was received by Respondent on July 24, 1987.

104. On August 17, 1987, Ms. Humphrey–Watkins received from Respondent a money order in the amount of $200.00. She sent him another letter requesting payment of the remaining $5.98, plus charges of $1.67 for filing a criminal complaint, for a total due of $7.65. To date, Ms. Humphrey–Watkins has not received the sums due her.

105. Respondent committed a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects.

106. Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

107. Respondent engaged in conduct that is prejudicial to the administration of justice.

## CONCLUSIONS OF LAW

1. The Committee has jurisdiction pursuant to Rules I, IV, and VI of the Disciplinary Code for the Wyoming State Bar.

2. At the time of Respondent's actions described in the foregoing Findings of Fact, Paragraphs 2 through 97, Respondent was subject to and his conduct was governed by Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming.

3. At the time of Respondent's actions described in the foregoing Findings of Fact, Paragraphs 98 through 107, Respondent was subject to and his conduct was governed by the Rules of Professional Conduct for Attorneys at Law.

## COUNT I

4. With regard to the conduct enunciated in Paragraphs 2 through 9 above, by accepting an advance fee from a client and filing a civil action on his behalf after the cause of action had been barred by the applicable statute of limitation, Respondent handled a legal matter without preparation adequate in the circumstances. Said conduct violates DR6–101(A)(2) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(2) provides as follows:

(A) A lawyer shall not: ...

(2) Handle a legal matter without preparation ·adequate in the circumstances; ....

## COUNT II

5. With respect to the conduct enunciated in paragraphs 10 through 17 above, by not appearing on behalf of his clients as scheduled and by not making arrangements for the hearing to be continued or for his clients to be represented by counsel at the hearing, Respondent neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

## COUNT III

6. With respect to the conduct enunciated in paragraphs 18 through 27 above, by undertaking to represent a client in a criminal case and by the failure of Respondent's office to properly inform the client of the correct time of the hearing causing the client to miss the hearing, and by the failure of Respondent's office to make ar-

rangements for the client's representation at the hearing, Respondent neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government to the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

### COUNT IV

7. With respect to the conduct enunciated in paragraphs 28 through 38 above, by Respondent's failure to notify his client of a court date which resulted in a bench warrant for his client's arrest and the client's bond being forfeited, and by Respondent or someone on his behalf advising the court that they were ready to go to trial, when the same was not true, Respondent engaged in conduct that is prejudicial to the administration of justice, engaged in conduct adversely reflecting on his fitness to practice law, and neglected a legal matter entrusted to him. Said conduct violates DR1–102(A)(5) and (6), and DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR1–102(A)(5) and (6) provide as follows:

(A) A lawyer shall not: ...

(5) Engage in conduct that is prejudicial to the administration of justice;

(6) Engage in an other conduct that adversely reflects on his fitness to practice law.

DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

### COUNT V

8. With respect to the conduct enunciated in paragraphs 39 through 44 above, by failing to respond to opposing counsel's request for admissions, which resulted in opposing counsel's questions/admissions being deemed admitted to the detriment of his client, Respondent neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government to the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

### COUNT VI

9. With respect to the conduct enunciated in paragraphs 45 through 59 above, by failing to amend the answer, by failing to submit an adequate pretrial memorandum as required by court rules, by failing to state affirmative defenses when on two occasions he was granted permission by the court to do so, by failing to take depositions as proper preparation for trial, by failing to obey court orders in the matter, by failing to appear for trial, and by causing a $1,000.00 sanction to be imposed on himself and his client, Respondent handled a legal matter without preparation adequate in the circumstances, neglected a legal matter entrusted to him, and engaged in conduct that is prejudicial to the administration of justice. Said conduct violates DR6–101(A)(2) and (3) and DR1–102(A)(5) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(2) and (3) provide as follows:

(A) A lawyer shall not: ...

(2) Handle a legal matter without preparation adequate in the circumstances;

(3) Neglect a legal matter entrusted to him.

DR1–102(A)(5) provides as follows:

(A) A lawyer shall not: ...

(5) Engage in conduct that is prejudicial to the administration of justice.

### COUNT VII

10. With respect to the conduct enunciated in paragraphs 60 through 68 above, by

filing a complaint on his client's behalf but failing to amend the complaint, causing his client's complaint to be dismissed with prejudice, Respondent handled a legal matter without preparation adequate in the circumstances and neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(2) and (3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at law of the State of Wyoming. DR6–101(A)(2) and (3) provide as follows:

(A) A lawyer shall not: ...

(2) Handle a legal matter without preparation adequate in the circumstances;

(3) Neglect à legal matter entrusted to him.

## COUNT VIII

11. With respect to the conduct enunciated in paragraphs 69 through 83 above, by failing to communicate with his client regarding the status of the case and the client's concerns, Respondent handled a legal matter without preparation adequate in the circumstances and neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(2) and (3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(2) and (3) provide as follows:

(A) A lawyer shall not: ...

(2) Handle a legal matter without preparation adequate in the circumstances;

(3) Neglect a legal matter entrusted to him.

## COUNT IX

12. With respect to the conduct enunciated in paragraphs 84 through 88 above, by failing to accomplish the stock transfer on behalf of his client for which he had been paid, Respondent neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

## COUNT X

13. With respect to the conduct enunciated in paragraphs 89 through 97 above, by failing to provide his client with a copy of her judgment and sentence so she could comply with its conditions, Respondent neglected a legal matter entrusted to him. Said conduct violates DR6–101(A)(3) of Rule 20 of the Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming. DR6–101(A)(3) provides as follows:

(A) A lawyer shall not: ...

(3) Neglect a legal matter entrusted to him.

## COUNT XI

14. With respect to the conduct enunciated in paragraphs 98 through 107 above, by issuing an insufficient funds check to pay the official court reporter to induce her to prepare the transcript, and failing to pay all sums due as a result of the work requested, Respondent committed a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respect, engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, and engaged in conduct that is prejudicial to the administration of justice. Said conduct violates Rule 8.4(b), (c), (d) of the Rules of Professional Conduct for Attorneys at Law. Rule 8.4(b), (c), (d) provides as follows:

It is professional misconduct for a lawyer to: ...

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; ....

## RECOMMENDATION

Based upon the foregoing Findings of Fact, and Conclusions of Law, the Committee recommends that the Wyoming Supreme Court disbar the Respondent from the practice of law, and assess Respondent the Committee's costs in the amount of $4,149.55.

Dated this 6th day of March, 1989.

/s/ David F. Palmerlee
David F. Palmerlee, Chairman
Wyoming State Bar
Grievance Committee
P.O. Box 109
Cheyenne, Wyoming 82003–0109
(307) 632–9061