THE STATE OF WYOMING, upon relation of WYOMING STATE BAR, L. A. BOWMAN, M. S. REYNOLDS, L. C. SAMPSON, JOHN U. LOOMIS, C. A. BRIMMER, P. W. SPAULDING, H. GLENN KINSLEY, OLIVER W. STEADMAN, E. C. RAYMOND, and A. H. MAXWELL, Plaintiff,

v.

G. W. HARDY, Defendant.

(No. 2275; Feb. 26, 1945; 156 P. 2d 309)

For the plaintiff the cause was submitted on the brief of W. J. Wehrli of Casper, Wyoming.

For the defendant the cause was submitted on the brief of A. W. Lonabaugh, of Sheridan, Wyoming, and Harry F. Schwartz of Casper, Wyoming.

## OPINION

RINER, Justice

This is an original proceeding brought in this Court by the State of Wyoming upon the relation of the duly elected, qualified and acting Commissioners of the Wyoming State Bar, selected as such under the rules adopted here and effective January 6, 1941, pursuant to an act of the legislature embodied in Chapter 97, Laws of Wyoming, 1939. That Act provided in part that this Court should "from time to time adopt and promulgate such rules and regulations" as the Court might see proper:

"Organizing and governing a bar association of the attorneys at law of this State to act as an administrative agency of the Supreme Court of Wyoming for the purpose of enforcing such rules and regulations as are prescribed, adopted, and promulgated by the Supreme Court under this Act, providing for the government of the State Bar as a part of the judicial department of the State government and for such divisions thereof as the Supreme Court shall determine, and requiring all persons practicing law in this State to be members thereof in good standing, and fixing the form of its organization and operation."

Rule No. 17 thus adopted and promulgated reads:

"No person resident in the State of Wyoming shall practice law in the State of Wyoming except an active member of the State Bar."

No one is authorized to be admitted to the practice of law in this State unless by order of this Court made upon due application therefor, Section 9-102 W.R.S., 1931.

The petition in the cause before us, after setting forth the grounds upon which complaint is made, asked for and obtained an order directing the defendant, G. W. Hardy, to appear and show cause why he should not be adjudged guilty of contempt of this Court for his

alleged unauthorized practice of law in this State, that he be restrained from continuing so to act and that if found guilty of contempt in that respect that he be punished accordingly.

This pleading charges in substance that the defendant, Hardy, a resident of Sheridan County, Wyoming, never has been and is not now a member of the Wyoming State Bar and has never been admitted and licensed to practice law in this or any other State. Statements are then made in considerable detail regarding the alleged giving of advice through correspondence by the said G. W. Hardy, concerning legal questions involving the drafting of a purported will on the part of Mrs. Jessie J. Wenzell, at that time a resident of New York City. The correspondence between these parties relative to this matter culminated in Hardy's in fact drawing a form of will which was forwarded to Mrs. Wenzell and by her executed October 27, 1938, in the presence of two witnesses. In this will Mr. Hardy was named both as executor and trustee thereof and the principal property affected by the instrument was a tract of some 160 acres of dry farming land located in Sheridan County, and owned at that time by Mrs. Wenzell.

It is averred also in this pleading that Mrs. Wenzell died on or about May 16, 1942, and that on July 8, following, the defendant, Hardy, filed the will aforesaid, which had been returned to him after its execution by the testatrix, with the Clerk of the District Court of Sheridan County, together with a petition for its probate and Hardy's appointment as executor thereof; that the defendant in said Court had drawn and prepared not less than twenty-five wills between January 1, 1942, and July 31, of that year, for other persons unknown to relators; that said defendant, during the past twenty-five years, has made a practice of drawing

and preparing wills for other persons, not less than one hundred such instruments having been thus drafted and that he has continuously held himself out as qualified to give advice concerning the preparation of and drafting instruments of this character.

The answer of the defendant filed here in response to the show cause order above mentioned admits that he has never been admitted or licensed to practice law in Wyoming or in any other State. The material substance of the pleading is to the effect that he has been employed as accountant, bookkeeper, law clerk, and ranch manager, by a firm of practicing attorneys in the city of Sheridan, Wyoming; that Jessie J. Wenzell was the widow of one D. C. Wenzell, who was one of the law partners of the firm aforesaid and when he died the remaining partner looked after the property owned by Mrs. Wenzell, in Sheridan County, this being the 160 acres of land already mentioned, and employed the defandant in connection with the handling of that real estate. Upon that partner's death Mrs. Wenzell continued the defendant as her agent to look after this property in said County, which was managed in connection with other ranch property which was held and owned by the widow and son of the surviving partner of the aforesaid firm of lawyers.

That the defendant discussed with the said surviving partner the advisability of Mrs. Wenzell making a will and thereafter when she submitted certain questions in regard to her making a will and the procedure to be followed, the defendant presented them to his then employer, the son of said surviving partner who also was a duly licensed attorney at law in the State of Wyoming, and had several discussions with him regarding these queries; that it was subsequently decided that a will should be drawn and submitted to her for her approval in New York City; that in the

actual preparation of the will the form used was taken from the files of his said employer who indicated the particular trust provision for incorporation in the proposed instrument; that "using the form suggested, *the facts assembled by Defendant,* and the particular trust provision, the will was then typed up by defendant and placed upon his employer's desk for examination and approval, and was advised some days later that 'it was all right' " (italics supplied); that this proposed form of will thus drafted was forwarded to Mrs. Wenzell who executed it in New York City, and returned same to defendant for safe keeping; that defendant never represented himself as a lawyer to anyone and never, at any time, intended to engage in the practice of law; that he is a competent typist and "his employers have in the past submitted to him for typing wills with the instructions as to the form to be used and the information in connection with the particular will and *he has on other occasions in the course of his employment as a law clerk, taken down information from certain parties who desired wills and submitted it to his employers,* who then indicated the proper form to be used, and he would then type it up and submit it to said employers for final approval. *This activity has continued for the past twenty years* (italics supplied); that he denies that he holds himself out to the general public as qualified to perform services constituting the practice of law. The prayer of the answer was that the Court find that the defendant has not been guilty of any unauthorized practice of law, that plaintiff take nothing by its petition and that defendant recover his costs.

Plaintiff's reply was for the most part a general denial admitting, however, that the proposed form of will drafted as set out in said answer was sent to Mrs. Wenzell in New York City, and that she executed the instrument there.

This Court by order duly made referred the cause, after these pleadings had been filed, to Honorable Harry P. Ilsley, of Newcastle, Wyoming, as Referee, "to take the evidence in writing and report it to this court with his findings of fact and conclusions of law. The Referee is authorized to summon and enforce the attendance of witnesses, administer all necessary oaths, and employ assistants necessary in taking the evidence and making the report."

After hearing had at which both parties appeared by counsel and submitted evidence the Referee made and transmitted to this Court a report setting forth his findings of fact and conclusions of law as follows:

## "FINDINGS OF FACT

### I.

That the Defendant is not qualified and was never admitted to the practice of law in this or any other jurisdiction.

### II.

That the Defendant for some years last past has drafted wills and assisted others in the preparation of wills.

### III.

That the Defendant has admitted drafting and preparing a large number of wills during the past twenty years.

### IV.

That the Defendant drafted and prepared the will of Jessie J. Wenzell, deceased.

### V.

That the Defendant, in his correspondence with Jessie J. Wenzell, answered a number of legal questions and gave legal advice on a number of subjects. He also held himself out as one qualified and authorized to draft wills, give opinions upon and answer legal questions.

## VI.

That the Defendant in his correspondence with Pearl Pickering answered a number of legal questions and gave legal advice on a number of legal points.

## VII.

That the Defendant testifies that he did not intend to engage in the unauthorized practice of law.

### CONCLUSIONS OF LAW

#### I.

That the preparation, drafting or drawing of wills, and the giving of advice with respect thereto, is the practice of law.

#### II.

That the acts and conduct of the Defendant, as set forth in the foregoing Findings of Fact, constitute the unauthorized practice of law in the State of Wyoming.

#### III.

That the Defendant has drawn contracts, leases and other instruments in his business as agent for others, but these matters cannot be considered practicing law.

#### IV.

That the Defendant is technically in contempt of this Court by reason of his having engaged in the unauthorized practice of law in the State of Wyoming and should be required to pay the costs of this proceeding and be either admonished or enjoined from practicing law in the future."

The Referee also returned to this Court a typewritten record of the stenographic notes of the oral testimony and the documentary evidence presented to him.

Both parties have filed objections in the nature of exceptions to this report and also briefs presenting their views on this record. The cause was not argued orally.

It will first be necessary to determine what effect should be given to the findings of fact and conclusions of law reported by the Referee. The following citations make it reasonably clear how they should be viewed:

In Copp v. Zimmerman, 123 Kans. 461, 256 Pac. 145, the. Court, in discussing the effect to be assigned a referee's finding of fact, announced that:

"It may be said that the referee's finding upon a question of fact is entitled to the same force as a special finding of a jury, and the same rule applied to the credibility of witnesses. We have not seen nor heard the witnesses, but the referee who had that opportunity has determined how far their testimony should be credited and has measured the weight of their testimony. In view of the evidence and findings, we cannot say.that a wrong conclusion had been reached."

The case of State ex. rel. Blessing v. Davis, 66 Neb. 333, 92 N.W. 740, was an original action in quo warranto instituted in the Supreme Court of Nebraska. After the issues were formed the case was referred with directions to the referee to hear evidence and report the same with his findings of fact and conclusions of law. In confirming the referee's report the Court said:

"The referee's findings on questions of fact have the force and effect of a verdict of a jury, and will be confirmed when supported by sufficient evidence."

In State v. Yates, 231 Mo. 276, 132 S.W. 672, the Court, passing upon the point now under consideration, remarked that:

" * * * the finding of fact by a referee in a law case fills the office of a special verdict, and must be judged of by the rules pertaining to verdicts. Hence, if there is substantial evidence to support the finding, an appellate court will no more meddle with the weight

of it than with the weight of the evidence in a jury trial. Thus in McGregor v. Construction Co., 188 Mo. loc. cit. 621, 87 S.W. 983, it was said: 'The findings of fact by a referee in a case at law stand upon the same footing, in an appellate court, as the verdict of a jury. It is not the practice of this court to review a finding of fact by a referee or jury in an action at law. This court looks to the facts, in such a case, only far enough to ascertain whether there is any substantial testimony to support the finding, and where such is the case it does not interfere with a finding of fact.' The McGregor Case but announces a settled doctrine, needing no new exposition."

So the Court in Wilson v. Monk, Inc., 140 Fla. 797, 192 So. 407, has adopted a similar view relative to the finding of a referee upon a question of fact in remarking that "It is settled law in Florida that the findings of a Referee upon questions of fact, where the witnesses are examined before him, are entitled to the same weight as the verdict of a jury. In neither the one case nor the other would an appellate court be warranted in disturbing such findings or verdict, or in reversing the judgment because the evidence is conflicting."

The Supreme Court of Montana in In re Lunke, 56 Mont. 226, 182 Pac. 126, had occasion to consider the point. That, too, was an original proceeding in that Court for the disbarment of an attorney. After issues joined the matter was assigned to a referee to take testimony, report findings and make recommendations. Affirming the referee's finding of facts, the Court said:

"While the findings of a referee are not absolutely conclusive, they are to be given the same dignity as the special verdict of a jury or the findings of a trial court, and whenever they depend upon conflicting testimony they will be treated as unassailable if there is any substantial evidence to sustain them. 23 R. C. L. 299, and cases cited."

The recommendations of the referee were somewhat modified.

Where the report of a referee was involved in Continental Bank & Trust Co. v. 200 Madison Ave. Corp., 43 N. Y. S. 2d 402, the Court expressed its view in these words:

"The official referee whose report is now before the court considered not only the affidavits, but also the testimony and exhibits. He saw the witnesses and heard them testify; he was in a position to know whose testimony was credible and whose incredible. Upon the questions of fact and credibility of the witnesses the court should leave the determination of those issues to the sagacity and experience of the official referee. There is evidence in the record which justified his conclusion and therefore the court should accept them. Boyd v. Boyd, 252 N. Y. 422, 169 N. E. 632."

The Court of Appeals of Ohio, in Caple v. Crane, 13 Oh. App. 317, appointed a referee to make separate findings of fact and conclusions of law. Relative to the referee's report as against the contention that the findings of fact were not sustained by the evidence and were contrary thereto, the Court said:

"The findings of fact reported by the referee stand as a verdict of a jury or a decision of the court and must be so treated by this court, the rule being concisely stated in 23 Ruling Case Law, 299, as follows:

" 'A referee's finding of a question of fact is entitled to the same weight as a special verdict of a jury, where the evidence was produced before and heard by him, or, as otherwise stated, must be given the same dignity on appeal as is required by the established practice as to any conclusion of fact made by a trial court. It should be sustained, unless plainly not warranted by any reasonable view of the evidence'."

In this connection Section 89-1329, W. R. S. 1931, which was apparently borrowed from the Code of the State of Ohio, may be here appropriately mentioned, which in part directs concerning the report of a referee on facts that such "report shall have the effect of a special verdict."

The next point to be examined is whether the preparation and drafting of wills for other persons as a business, together with the giving of legal advice and counsel regarding same, is to be regarded as the pratice of law. We have not the least doubt that it is as the referee, in substance, concluded. The following authorities, which might be very easily largely supplemented, so decide: In People ex rel. Committee on Grievances of Colorado Bar Ass'n. v. Denver Clearing House Banks, etc., 99 Colo. 50, 59 Pac. 2d 468, the holding of the Court and the reasons therefor are concisely stated in this language:

"We think the drawing of wills, as a practice, is the practice of law, and this for three reasons; first, because of the profound legal knowledge necessary for one who makes a practice of this work; second, because all these instruments, before they become effective, must be filed in and administered by a court; and, third, because what we consider the weight of authority so holds. People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901, 902; In re Will of Maresh, 177 Wis. 194, 198, 187 N. W. 1009; People v. People's Trust Co., 180 App. Div. 494, 167 N. Y. S. 767; In re Eastern Idaho Loan & Trust Co., 49 Idaho, 280, 288 P. 157, 73 A. L. R. 1323."

The view thus expressed has received the approval of the Supreme Court of Michigan in Detroit Bar Ass'n v. Union Guardian Trust Co., 282 Mich. 216, 276 N. W. 365.

In accord we find the Court in Judd v. City Trust & Savings Bank, 133 Oh. St. 81, 12 N. E. 2d 288, saying that:

"There can be no doubt that the drawing of wills and trust agreements for others, especially as a confirmed occupation, constitutes the practice of law to an important degree. Their preparation requires a considerable knowledge of the law, and includes the imparting of legal advice to their creators. When a testamentary disposition of property is made by such instruments,

they must, if unrevoked, be administered, and sometimes interpreted, by a court of proper jurisdiction."

See also Cain, etc., v. Merchants National Bank & Trust Company ,66 N. D. 746, 268 N. W. 719.

Supplementing the thought embodied in the excerpt above quoted from the opinion of the Supreme Court of Colorado may very well be considered the language of a Pennsylvania Court in Shortz v. Yetter, 38 D. & C. 291, as follows:

"Advice and instructions offered to the general public concerning the highly valuable right and privilege of making wills, and involving, as such advice and instructions necessarily do, important questions as to the descent and devolution of real and personal property, are unquestionably an important branch of the practice of law; and while a layman is privileged to draw his own will, and perhaps to offer advice in his own family or family circle, this is a far different thing from holding himself out as a competent and qualified adviser to the general public in matters of this nature. The public is entitled to be protected from such empirical advice."

Keeping in mind certain evidence submitted in the case at bar, authorities on another phase of this matter of the preparation and drafting of wills may very appropriately be briefly reviewed. As preliminary thereto it may be noted that the 35th Canon of Professional Ethics adopted by the American Bar Ass'n provides in part as follows:

"The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer. A lawyer's responsibilities and qualifications are individual. He should avoid all relations which direct the performance of his duties in the interest of such intermediary. A lawyer's relation to his client should be personal, and the responsibility should be direct to the client."

In State ex rel. Boynton, Attorney General, v. Perkins, 138 Kan. 899, 28 Pac. 2d 765, the Court points out that:

"One who confers with clients ,advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law. See Berk v. State, supra, (225 Ala. 324, 142 So. 832, 84 A. L. R. 740) and authorities cited therein."

So in Grand Rapids Bar Ass'n v. Denkema, 290 Mich. 56, 287 N. W. 377, one of the points urged in the cause invoked this disposition:

"It is defendants' contention that although he may not be legally permitted to draft a proposed will, he should be allowed to draft an outline of the testator's suggestions for use by an attorney to draft the will. It is his practice to take notes of what people who consult him want regarding the distribution of their property in case of death, which notes he takes to an attorney who drafts the will. This is a part of defendant's business. He desires to hold himself out as a middleman,— an intermediary between the attorney and client. This activity on his part was passed upon adversely to defendant's contention in Hightower v. Detroit Edison Co., 262 Mich. 1, 247 N. W. 97, 86 A. L. R. 509."

The case of Merrick v. American Security & Trust Co., 107 Fed. 2d 271, decided by the Court of Appeals for the District of Columbia supplies us with this very well stated disposition of the matter considered by the Kansas and Michigan courts, supra:

"The practice of law is restricted to persons whose character and competence have been examined, who have been licensed, and who can be disbarred, in order that the public may be protected against lack of knowledge or skill on the one hand and lack of integrity or fidelity on the other. Practice by corporations or other unlicensed persons, even though they act exclusively through licensed lawyers, is undesirable because the interjection of an employer between lawyer and client tends to dilute the lawyer's loyalty to his client and divert it to his employer. In general, if there is to be

an intermediary employer he must himself be a licensed attorney. But 'a man may plead his own case in court, or draft his own will or legal papers.' He may draft any papers to which he is in a substantial sense a party, and any which closely concern his own affairs."

A writ of certiorari sought from the United States Supreme Court in this cause was thereafter denied. See also In re Shoe Mfrs. Protective Ass'n Inc., infra.

Recurring now to the facts presented by the record, which was returned to this Court by the Referee, we may say that we have carefully examined both the documentary evidence in the form of letters submitted to him and the typed report of the oral proofs and we are obliged to conclude that there is substantial evidence to support the findings of fact made by him. Where the evidence is conflicting, and that appears to be so in some respects, in the record under the authorities reviewed above the ordinary rule applicable in appellate courts to a finding of fact made by a trial court should govern. No useful purpose would be accomplished by an elaborate review of the evidence herein and we shall not undertake it. Each case of this character must, to a large extent, be disposed of upon its own facts. As said by the Supreme Judicial Court of Massachusetts, in In re Shoe Mfrs. Protective Ass'n Inc., 295 Mass. 369, 3 N. E. 2d 746:

"We believe it is impossible to frame any comprehensive and satisfactory definition of what constitutes the practice of law. To a large extent each case must be decided upon its own particular facts."

The Referee saw and heard the witnesses as they gave their testimony and was in a much better position than we are to determine the weight to be given the statements of each. Especially is this so in view of the fact that the Referee, as an able and experienced Judge of the District Court, has had long service in considering and determining the weight of oral testimony.

Relative to this matter also it may be observed that the letters of the defendant put in evidence, at their face value show that he personally undertook to answer questions propounded by Mrs. Wenzell, and her daughter, Mrs. Pickering, which would require the services of a trained lawyer in answering them accurately. For example, he prefaces a list of questions of this kind propounded by Mrs. Wenzell to him regarding the preparation and drafting of her will and his answers thereto with the statement "with reference to the questions you have asked me I am pleased to reply to them the best I can, to-wit." The questions submitted by Mrs. Wenzell and the answers given by the defendant then follow. It is true, that in his oral testimony, Mr. Hardy states that all the interrogatories were submitted to a lawyer in active practice and his replies were typed as the answers to the several queries. However, these letters were written long before any controversy such as we now have arose and it may be noted that the letters do not appear to contain any explanation of that character. Again, we find the defendant saying in response to the inquiry from Mrs. Wenzell, "have you made wills?", "I have drawn more than one hundred wills the last twenty-five years." Supplementing that statement he also says that "most of these have been passed on" by a lawyer in active practice "as being satisfactory." At any rate we consider the weight to be given to the letters and the oral explanation given by the defendant regarding them was for the Referee to determine. It is a reasonable and fair conclusion that the defendant held himself out as one qualified to act as only a lawyer admitted to practice law by this Court legally and properly could do.

It is contended by the defendant that it was his practice to consult with parties who desired wills and other legal instruments drafted, to obtain from them the necessary data, to submit this information to a lawyer

regularly admitted to the Bar of this State, and, under the latter's direction and with the use of forms approved by him, type the final draft of the will or other paper, and that such conduct on defendant's part was not engaging in the practice of law. This view is not only expressed in defendant's oral testimony but also in the answer in this matter placed on file here by him as disclosed by the portions thereof we have quoted above and italicized. In this contention, under the authorities reviewed above, we think he is also mistaken. The interviewing of clients for the purpose of obtaining the proper data in order to accurately preserve legal rights is unquestionably the duty of a lawyer and not that of a layman. In such a situation the lawyer must shape the will from a careful assembly of facts and conditions, the legal effect of which must be precisely determined by a mind trained in the consideration of existing laws in order to accomplish a specific result and guard against untoward consequences. In such circumstances no lay middleman should intervene.

We agree with, therefor, and confirm all the findings of fact and conclusions of law submitted by the Referee concerning the consequences which should follow as a result of the conduct of the defendant. We are inclined to modify, somewhat, the recommendation made by that official, as to the penalty to be imposed.

It appears that the defendant has been engaged in the practices concerning which plaintiff complains for many years. This fact must have been known to members of the Bar residing in the vicinity, and, indeed, the record so indicates. Yet no suggestion of impropriety or warning appears to have been given the defendant and no steps were or have been taken to stop such practices until the present proceeding was instituted. The record clearly indicates also, as the Referee has inferentially found, that the defendant did not intend

to engage in the unauthorized practice of law. Inasmuch as this is the first case of this character brought to our attention, under all the circumstances disclosed by the record before us, we prefer to refrain from being unduly severe with defendant notwithstanding he has mistakenly transgressed the boundaries that subsist between lay and professional action in the matter of drawing wills.

All things considered, we do not believe that it will be necessary to enjoin defendant from continuing these practices. In the light of what we have hereinabove said and the state of the law concerning this matter as we find it and as reviewed in this opinion, we feel that his own desire to abide by the law will control his conduct in the future. It is our view, also, that the entire costs of this proceeding should not be borne by him. The judgment will be that each party shall pay one-half of the accrued costs and that upon this being done the proceeding will be dismissed. An order to that effect will be entered.

*Dismissed as Ordered.*

BLUME, C. J., concurs, and KIMBALL, J., concurs in the result.