Nathan E. JONES, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–259.

Supreme Court of Wyoming.

Aug. 24, 1995.

Leonard D. Munker, State Public Defender; Gerald M. Gallivan, Director of Defender Aid Program, and Tammy J. Richards and Diane M. Lozano, Student Interns for Defender Aid Program, for appellant.

Joseph B. Meyer, Attorney General, Sylvia Lee Hackl, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mary Beth Wolff, Senior Assistant Attorney General, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Nathan Jones appeals from his convictions for one count of aiding and abetting aggravated robbery and one count of conspiracy to commit aggravated robbery.

We affirm.

## ISSUES

Appellant's counsel presents six issues:

I. Whether Jason Stricker possessed actual authority under *United States v. Matlock* to permit a consensual entry or search when Jason Stricker was an overnight guest in appellant's home and did not possess the common authority over the premises necessary to validly consent to a search.

II. Whether Jason Stricker possessed apparent authority under *Illinois v. Rodri-guez* [497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ] to permit a consensual entry or search of appellant's home when it was not reasonable for Officer Ritter or Officer Beran to believe Jason Stricker had authority to consent.

III. If this court holds that Jason Stricker had authority to consent to search appellant's home, then consent to "look around" was not a consent to search and that the subsequent seizure was thus beyond the scope of consent given by Jason Stricker.

IV. Whether search and seizure of the coat and knife found in appellant's home was justified under the plain view doctrine when probable cause to believe they were used in a crime was not present because Officer Ritter did not have knowledge of facts establishing a reasonable nexus between the coat and knife and criminal activity.

V. The trial court erred in denying defense Motion for Acquittal as the state did not present sufficient evidence to prove the second element of aiding and abetting, that appellant associated himself with and actively participated in the success of the criminal venture, beyond a reasonable doubt.

VI. Count II of the information was defective as it charged Appellant only with conspiring to commit larceny, a misdemeanor, and[,] therefore, the trial court lacked jurisdiction under *Walker* to try and convict appellant for the felony of conspiring to commit armed robbery.

Appellant presents three additional issues in his *pro se* brief:

I. Was Appellant denied effective assistance of counsel, before, during, and after trial, due to counsel's failure to investigate and call witnesses, to properly investigate jury interference, and to properly investigate the case?

II. Was Appellant denied effective assistance of counsel on this direct appeal, due to not having competent counsel, but by having un-supervised Student Interns prepare brief of Appellant, without affording Appellant the right to consult with

them as to what issues should be raised, and in not affording Appellant the right to read or review both his own trial transcripts and his own brief on appeal?

III. Is Appellant being denied his constitutional right to assistance of competent counsel in this direct appeal and under prior case law, may he be denied access to this court in violation of the constitution of the United States?

## FACTS

During the evening of January 17, 1993, a man purchased a burrito, a can of Coke, and several other items at the Stop N Go Convenience Store located in Casper. Before the cashier could close the cash register drawer, the man displayed a butcher knife and demanded money from the cashier. The man took the currency, a bundle of food stamps, and several rolls of coins, and he left the store, heading east on foot.

The cashier told an officer who had been dispatched to the scene that the man was wearing a tan canvas jacket and rubber-like gloves and that the man brandished a large butcher knife. Two other officers, who had heard the cashier's description of the robber over their radio, soon arrived and began searching on foot for the suspect in the neighborhood east of the store. They noticed a light in the trailer house which was located across the street from the Stop N Go. Due to the proximity of the trailer to the crime scene, the officers decided to see whether anyone in the trailer had seen or heard anything. When the officers knocked on the door, a young man, Jason Stricker, opened the door. He told the officers that they could "come on in," and then he resumed watching television in the living room with another young man, Jeremy Holmquist. Stricker and Holmquist had been on their way to Cheyenne when they stopped in Casper and spent the night at Stricker's aunt's trailer.

The officer testified that Stricker had stated that he lived in the trailer with his aunt and that he had been inside all evening ex-

cept for when he went outside to quiet his dog. He also said that, while he was outside, he had seen a man running down the alley who was wearing a gray jacket. One of the officers asked Stricker whether he "could look in the trailerhouse to see if anyone else was there," and Stricker replied, "[S]ure, go ahead."

The officer found a tan canvas jacket on the bathroom floor and a pair of rubber gloves on the bathroom counter. The officer touched the jacket and observed that it was cold. He picked up the jacket and felt something heavy inside it. He found three rolls of coins and some loose change in the pocket of the jacket. The officer also found a large butcher knife on the kitchen counter, which knife matched the description of the one used in the robbery.

The officers seized the jacket and its contents, the gloves, and the knife and took them to the police department. The officers also took Stricker and Holmquist to the police department, where they questioned them. Stricker and Holmquist told the officers that Appellant and another man had offered them an opportunity to participate in the robbery but that the boys had declined the offer. Stricker's aunt signed a form, consenting to allow another search of the trailer to be made. During this second search, the officers recovered a burrito wrapper, a Coke can, $46 in food stamps, and a BB gun.

The police arrested Appellant, and a jury found that he was guilty of one count of aiding and abetting armed robbery[1] and of one count of conspiracy to commit armed robbery.[2] Appellant appealed to this Court.

The State Public Defender's office was appointed to represent Appellant in this appeal. Two law student interns and the director of the Defender Aid Program of the University of Wyoming College of Law assisted with the filing of a brief on Appellant's behalf. Appellant filed a motion in which he asked this Court to appoint new appellate counsel or, in the alternative, to allow him to file a supplemental brief. We denied Appellant's request

---

1. *See* Wyo.Stat. § 6–1–201(a) (1988).

2. Wyo.Stat. §§ 6–1–303, 6–2–401 (1988).

for the appointment of new appellate counsel, but we granted his request to file a supplemental *pro se* brief.[3]

## DISCUSSION

### I. *Motion to Suppress*

The first four issues address the initial search which was made of the trailer. Appellant argues that the evidence which was seized during the search of the trailer should have been suppressed because: (1) Stricker did not possess either actual or apparent authority to give his consent for the search to be made; (2) if Stricker did possess authority to give his consent, the officers exceeded the scope of that consent; and (3) the search and seizure of Appellant's jacket was not justified under the plain view doctrine.

### A. STANDARD OF REVIEW

[1, 2] Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; [assess] the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's determination. The issue of law, whether an unreasonable search or seizure occurred in violation of constitutional rights, is reviewed de novo.

*Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994) (citations omitted).

### B. CONSENT FOR THE SEARCH

■ The Fourth Amendment to the United States Constitution generally prohibits the warrantless entry of a person's home. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). The prohibition, however, does not apply to situations in which consent has been obtained from either the individual whose property is

being searched or a third party who has common authority over the premises. *Id.; see also City of Laramie v. Hysong,* 808 P.2d 199, 203–04 (Wyo.1991).

As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. at 2801.

■ The district court determined that the officers had reasonable cause to believe that Stricker had authority to give his consent for the initial search to be made. We agree. At the time that the initial search was made, the facts which were available to the officers were that Stricker appeared to be nineteen years old; that he and Holmquist were sitting in the living room, watching television; that Stricker said that he lived in the trailer with his aunt; and that Stricker had gone outside earlier in the evening to quiet his dog. According to these facts, the officers had every reason to believe that Stricker lived at the trailer and that he had common authority over the premises.

### C. SCOPE OF CONSENT

■ Appellant claims in the alternative that the officer exceeded the scope of Stricker's consent when he seized the jacket and the other evidence during the initial search of the trailer for a suspect. The standard for measuring the scope of consent pursuant to the Fourth Amendment is objective reasonableness: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Flori-*

---

**3.** "Although there is no Sixth Amendment right to file a pro se brief when the appellant is represented by counsel, nothing precludes an appellate court from accepting the pro se brief and considering the arguments contained therein for whatever they may be worth." *Hayes v. Hawes,* 921 F.2d 100, 102 (7th Cir.1990).

*da v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). "The scope of consent is generally defined by the expressed object of the search." *United States v. Mains,* 33 F.3d 1222, 1227 (10th Cir.1994). When the officers asked Stricker whether they could look around "to see if anyone else was there," they reasonably understood Stricker's consent to extend to any place where a suspect could hide. *See id.* The officer did not exceed the scope of Stricker's consent because he found the jacket, the gloves, and the knife in the bathroom and the kitchen, both of which were places where a suspect could hide.

### D. SEIZURE OF THE JACKET, GLOVES, AND KNIFE

Appellant contends that the seizure of the jacket and the other evidence which were found in the initial search was not justified under the plain view doctrine because the items did not appear to be possible evidence. To that extent, Appellant claims that the incriminating nature of the jacket was not immediately apparent and that the officer did not have probable cause to search the jacket until after he had touched it, felt that the jacket was cold, and felt something hard in the pocket of the jacket. Appellant further maintains that no amount of probable cause can justify a warrantless search or seizure when exigent circumstances are not present.

This Court has addressed the plain view doctrine as it relates to the warrantless seizure of evidence. *Jessee v. State,* 640 P.2d 56, 62–63 (Wyo.1982). We held that seizing evidence which was in plain view without having a warrant was permitted only when exigent circumstances existed. *Id.* We applied our *Jessee* holding in *Ortega v. State,* 669 P.2d 935 (Wyo.1983), where we stated:

[T]he plain view doctrine only legitimates the police officer's observation of an item. As this court has previously stated: "Plain view alone is not enough to justify warrantless seizure of evidence; exigent circumstances must also be present." *Jessee v. State, supra,* at 62–63....

. . . In other words, plain view may give a police officer the probable cause necessary for a warrant to issue but that by itself is not enough for the seizure of evidence. To justify a warrantless seizure, one of the exigent circumstances which authorizes a warrantless seizure must be in existence.

669 P.2d at 942–43.

We subsequently required the existence of exigent circumstances to justify warrantless, plain view seizures in various other cases:

It is a well-settled rule that warrantless searches and seizures are per se unreasonable under both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. However, certain recognized exceptions to the rule may justify warrantless searches and seizures. One of those exceptions applies to searches and seizures which are justified under the plain view doctrine. This Court recently stated:

"When an officer lawfully occupies the vantage point from which he can observe possible evidence in plain view, there is no search, reasonable or unreasonable, proscribed by ... constitutional [prohibitions]....

"When an officer's observation of items of evidence is made within the rationale relating to plain view, he may proceed to seize the evidence if there are exigent circumstances justifying the seizure."

*McDermott v. State,* 870 P.2d 339, 343–44 (Wyo.1994). "The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety. If such facts reflect the danger of destruction of valuable evidence, exigent circumstances are present." *Patterson v. State,* 691 P.2d 253, 258 (Wyo.1984), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985).

*Starr v. State,* 888 P.2d 1262, 1265 (Wyo. 1995) (some citations omitted).

After we rendered our *Jessee* decision, the United States Supreme Court analyzed whether exigent circumstances should be required before an officer may seize evidence without obtaining a warrant when the officer perceives the evidence in plain view from a vantage point where he is lawfully present:

The *Coolidge [v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971),] plurality observed, "It is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure," simply as "the normal concomitant of any search, legal or illegal." [403 U.S.], at 465 [91 S.Ct. at 2037]. The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question. The *Coolidge* plurality, while following this approach to "plain view," characterized it as an independent exception to the warrant requirement. At least from an analytical perspective, this description may be somewhat inaccurate. We recognized in *Payton v. New York,* 445 U.S. 573, 587 [100 S.Ct. 1371, 1380, 63 L.Ed.2d 639] (1980), the well-settled rule that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." A different situation is presented, however, when the property in open view is "situated on private premises to which access is not otherwise available for the seizing officer." *Ibid.,* quoting *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 354 [97 S.Ct. 619, 630, 50 L.Ed.2d 530] (1977). As these cases indicate, "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

The principle is grounded on the recognition that when a police officer has observed an object in "plain view," the owner's remaining interests in the object are merely those of possession and ownership. Likewise, it reflects the fact that requiring

police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a "needless inconvenience," 403 U.S., at 468 [91 S.Ct., at 2039], that might involve danger to the police and public. We have said previously that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on ... Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse,* 440 U.S. [648], 654 [99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) ]. In light of the private and governmental interests just outlined, our decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately. This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property.

*Texas v. Brown,* 460 U.S. 730, 737–39, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983) (footnote and some citations omitted).

■ We agree with the United States Supreme Court and, therefore, overrule *Jessee* and its progeny. We hold that those objects which an officer has probable cause to believe are possible evidence and which are in the officer's plain view when the officer is lawfully present in the place where the objects are found are subject to a warrantless seizure without the necessity of exigent circumstances being present, and we hold that those objects may be introduced into evidence.

We do not hastily overrule our prior decisions. We consider the doctrine of *stare decisis* to be an important principle which furthers the " 'evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' " *Cook v. State,* 841 P.2d 1345, 1353 (Wyo.1992) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991)).

Nevertheless, we should be willing to depart from precedent when it is necessary " 'to vindicate plain, obvious principles of law and remedy continued injustice.' " *Id.* (quoting *Gueke v. Board of County Commissioners,* 728 P.2d 167, 171 (Wyo.1986)). When precedential decisions are no longer workable, or are poorly reasoned, we should not feel compelled to follow precedent. *Id. Stare decisis* is a policy doctrine and should not require automatic conformance to past decisions. *Id.*

■ We turn to the application of this holding to the case at bar. The jacket and the gloves were lying in plain view inside the bathroom, and the butcher knife was lying in plain view in the kitchen. Since Stricker had consented to a search of these areas, the officer occupied a lawful vantage point when he saw these items. We agree with Appellant's suggestion that the officer was not free to examine the jacket until after he had probable cause to believe that the jacket was possible evidence. *See Lance v. State,* 425 N.E.2d 77, 81 (Ind.1981). The incriminating nature of the jacket, however, was immediately apparent to the officer, even before he touched the jacket. The jacket matched the cashier's description of the jacket which had been worn by the robber, and the jacket was lying near a pair of gloves which matched the cashier's description of those which had been worn by the robber. The knife also matched the cashier's description of the knife which had been used by the robber. Since the items matched the cashier's descriptions and since they were found near the scene of the robbery, they had the appearance of being possible evidence. *See, e.g., Kish v. State,* 642 P.2d 453 (Wyo.1982) (boots found in an apartment appeared to be possible evidence where the apartment was located a short distance from the burglary site and the boots fit the description of the stolen boots).

We conclude that the police officer properly seized the jacket, gloves, and knife and that the trial court did not err when it admitted these items into evidence.

## II. *Sufficiency of the Evidence*

■ Appellant alleges that the district court erred when it denied his motion for an acquittal because the prosecution did not present evidence sufficient to prove the elements of aiding and abetting aggravated robbery.

Our frequently stated standard of review for a sufficiency-of-the-evidence question is not whether the evidence establishes guilt beyond a reasonable doubt for us but rather is whether sufficient evidence forms the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

*Gilliam v. State,* 890 P.2d 1104, 1108 (Wyo. 1995). To convict a person of aiding and abetting in the commission of a crime, the prosecution must prove that "the crime in question was committed by someone and that the person charged as an aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture." *Virgilio v. State,* 834 P.2d 1125, 1127 (Wyo.1992).

■ Stricker testified that Appellant and another man who was named "Ray" came to the trailer and got the jacket from the room which Appellant shared with Stricker's aunt. Ray tried to conceal a BB gun under the jacket, but it would not fit, and Appellant and Ray left. Appellant returned and watched through the window until Ray ran out of the Stop N Go. Appellant left again and returned a few minutes later with Ray, who was wearing the jacket. Ray placed a burrito and a can of Coke on the coffee table; Appellant gave Stricker some food stamps; and either Ray or Appellant told Stricker that, if he and Holmquist said anything, Ray and Appellant would kill them. The officers found the jacket, the burrito wrapper, the Coke can, the food stamps, and the BB gun in the trailer.

Stricker described in detail Appellant's participation in the robbery, and his account was corroborated by the evidence found at the trailer. The evidence, when we view it in the light most favorable to the State, amply supports Appellant's conviction for aiding and abetting aggravated robbery.

### III. *Defective Information*

Appellant claims that Count II of the information was defective because it charged him with conspiracy to commit larceny, not conspiracy to commit aggravated robbery. He argues that the district court lacked jurisdiction to hear a case which involved felony conspiracy to commit aggravated robbery because he was bound over for trial on misdemeanor conspiracy to commit larceny.

■ The absence of plain and direct language in a criminal complaint, a criminal warrant, and an information may constitute reversible error. *See Walker v. State*, 847 P.2d 542, 543-45 (Wyo.1993) (explained in *Lowseth v. State*, 875 P.2d 725, 728 (Wyo. 1994)). However, when the defendant has actual knowledge of the matter which is missing from an information, the defendant cannot claim any prejudice or error. *See McDermott v. State*, 870 P.2d 339, 348 (Wyo. 1994).

■ Here, the amended information stated:

#### COUNT II

That on or about the 17th day of January, 1993, in the County of Natrona, State of Wyoming, [Appellant], Defendant herein, did unlawfully conspire with another to commit the crime of Larceny, as defined by W.S. § 6-3-402, and did threaten another with or intentionally put him in fear of immediate bodily injury, and in the course of committing said crime did use or exhibit a deadly weapon or a simulated deadly weapon, in violation of W.S.1977, as amended, § 6-2-401 and § 6-1-303 ...

The affidavit which accompanied Appellant's arrest warrant stated: "With the statements from the witnesses that saw the crime unfold [the investigating officer] feels that the defendant did in fact *conspire and help commit the armed robbery* at said location." (Emphasis added.) The form which requested the arrest warrant described the offense as being: "Agg. Robbery *& conspiracy to commit armed Robbery.*" (Emphasis added.) The defense counsel filed a motion for a bill of particulars in which he requested that the prosecutor "[s]tate with particularity the

acts or words by [Appellant] which the State alleges constitute *conspiracy to commit aggravated robbery* under Count II of the Amended Information filed herein." (Emphasis added.) The defense counsel also implicitly acknowledged at the hearing on his motion for a bill of particulars that Appellant was charged with conspiracy to commit aggravated robbery. The documents which accompanied the arrest warrant and the statements made by the defense counsel indicate that Appellant was adequately informed that he would be tried for conspiracy to commit aggravated robbery. Although the information was not artfully drafted, Appellant's defense was in no way prejudiced, and Appellant cannot claim any error. *See McDermott*, 870 P.2d at 348.

### IV. *Effective Assistance of Counsel*

■ In his *pro se* brief, Appellant contends that he was deprived of effective assistance of counsel both at his trial and in this appeal. Our test for effective assistance of either trial or appellate counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

*Dickeson v. State*, 843 P.2d 606, 609 (Wyo. 1992) (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

#### A. TRIAL COUNSEL

Appellant claims that he was denied effective assistance of trial counsel because his trial counsel failed to investigate and call witnesses, to properly investigate possible

jury interference, and to properly investigate the case. Specifically, Appellant claims that his defense counsel failed to show that Stricker was under severe stress and attempted to commit suicide prior to the trial; failed to interview, and to call as a witness, the co-owner of the Stop N Go; failed to show that the prosecutor falsely denied having made a plea offer; failed to investigate possible jury interference; and failed to protect his constitutional rights. Appellant argues that, if his defense counsel had not committed these errors, Appellant would have been able to establish a reasonable doubt. We conclude that Appellant's claims are without merit.

 Even if we assume that Appellant's allegations are true, the allegations do not rise to the level of being deficient performance, and his defense counsel's actions did not prejudice Appellant's defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The defense counsel thoroughly cross-examined Stricker and attempted to impeach his credibility. The co-owner of the Stop N Go was not present during the robbery, and Appellant does not indicate how her testimony would have been favorable to his position. Appellant also does not explain how evidence of the prosecutor's plea offer would have benefited him at trial. Appellant's remaining claims about ineffective assistance of trial counsel relate to his assertion that he learned of his guilty verdict over a police radio before he had been brought into court to hear the verdict. W.R.Cr.P. 31(a) requires a verdict to be returned in open court, and it would be improper for court personnel to inform the accused of the verdict before it had been announced in court. Appellant, however, does not allege that anyone attempted to influence the jury or that the jury itself engaged in misconduct. We fail to see how learning of the verdict early could have prej-

udiced Appellant's rights. *See Lindsey v. State*, 725 P.2d 649, 657–58 (Wyo.1986).

## B. APPELLATE COUNSEL

Appellant contends that he has been denied effective assistance of counsel in his appeal because (1) he did not consent to allow student interns to "prepare or argue his appeal," (2) he was not allowed to read or review the brief from the Defender Aid Program before it was filed, and (3) he was not allowed to read or review the trial transcripts.

 Our rules require a client to consent in writing before a law student may practice law on the client's behalf. Rule 12 of the RULES OF THE SUPREME COURT OF WYOMING PROVIDING FOR THE ORGANIZATION AND GOVERNMENT OF THE BAR ASSOCIATION AND ATTORNEYS AT LAW OF THE STATE OF WYOMING. Pursuant to Rule 12,[4] writing an appellate brief constitutes the practice of law. *Cf. State ex rel. Wyoming State Bar v. Hardy*, 61 Wyo. 172, 156 P.2d 309 (1945) (interviewing clients and drafting wills constitutes practice of law). Here, law student interns wrote a brief on behalf of Appellant without first obtaining his written consent. We hold, however, that the failure to obtain Appellant's written consent before the brief was written was a mere procedural technicality which does not constitute ineffective assistance of counsel. *See State v. Monroe*, 508 So.2d 910, 914 (La.Ct.App.1987).

The brief was signed by both the interns and the director of the Defender Aid Program, who is a licensed attorney. A similar scenario arose in *United States v. Rosnow*, 981 F.2d 970 (8th Cir.1992). The petitioners in that case were represented on appeal by two attorneys, one of whom had been suspended from the practice of law, and the petitioners claimed that they were entitled to

---

**4.** Rule 12 states in pertinent part:

 (a) *Definitions.*
 . . . .

 (4) "Practice of law" means advising others and taking action for them in matters connected with law. It includes preparation of legal instruments and acting or proceeding for another before judges, court, tribunals, commissioners, boards or other governmental agencies.

 (b) *Conditions.*
 . . . .

 (2) *An eligible law student may engage,* as an intern, *in the practice of law* for indigent persons . . . conditioned as follows:
 (i) *The person to be represented consents in writing* to legal assistance to be provided by the student[.]
(Emphasis added.)

rebrief and reargue their appeals. 981 F.2d at 971. The court disagreed: "If co-counsel provides petitioners with effective assistance at all critical stages of the proceedings, petitioners' Sixth Amendment rights have been protected." 981 F.2d at 972. Pursuant to W.R.A.P. 19.01, any attorney who has been shown as participating in the filing of a brief is deemed to have appeared in the cause. Since Appellant's brief was signed by licensed co-counsel, his right to counsel was protected. We note further that Appellant was notified that law students would be preparing a brief on his behalf and that Appellant did not object to the involvement of the interns until after the brief had been filed. *See Darnell v. State,* 623 P.2d 617, 620 (Okla. Crim.App.1981).

■ According to Appellant, he did not receive a copy of the brief until after it had been filed. Appellate counsel should allow their clients to review their briefs before the briefs are filed. *See* Rules 1.2 & 1.4 of the RULES OF PROFESSIONAL CONDUCT FOR ATTORNEYS AT LAW. In this case, however, the failure to allow Appellant to review his brief before it was filed did not constitute ineffective assistance of counsel. The interns and their supervisor thoroughly briefed the issues presented on this record, and we perceive no deficiency in their performance. Aside from his claim of ineffective assistance of trial counsel, which we have already discussed, Appellant has not suggested any new issue which his appellate counsel failed to raise. Appellant, consequently, has also failed to demonstrate that his appellate counsel's performance prejudiced him in any way. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ The failure to allow Appellant to conduct an independent review of the trial transcripts also did not constitute ineffective assistance of appellate counsel. An appellant does not have a constitutional right to have a personal copy of the transcripts when his attorneys have had access to them. *Gay v. Watkins,* 579 F.Supp. 1019, 1021 (E.D.Pa. 1984); *see also Chamberlain v. Ericksen,* 744 F.2d 628, 631 (8th Cir.1984). Here, the interns and their supervisor had access to the record, and it is apparent that they conduct-

ed a thorough review of the record for possible errors.

■ Appellant further claims that, by denying his *pro se* motion for appointment of new appellate counsel, this Court has deprived him of due process and equal protection in violation of the Fourteenth Amendment to the United States Constitution. We disagree. An indigent has a right to have appointed counsel represent him in his first appeal, which is granted as a matter of right, from a criminal conviction. *Douglas v. People of State of California,* 372 U.S. 353, 356–57, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963). But, when appellate counsel is discharged after a brief has been filed, the appointment of substitute appellate counsel is not necessary. *See United States v. Leifried,* 732 F.2d 388, 390 (4th Cir.1984).

Appellant also claims that, if this Court dismisses his brief without considering the issues he has raised, he will be denied his rights in violation of the United States Constitution. Since we have addressed the merits of Appellant's *pro se* brief, we do not need to consider this issue.

## CONCLUSION

We have not found any reversible error in any of the issues which were raised by Appellant; therefore, his convictions are

Affirmed.